Cecil L. **WILLIAMS**, et al., Plaintiffs,

v.

**CATERPILLAR, INC.**, a Corporation, et al., Defendants.

No. C–88–1281 EFL.

United States District Court, N.D. California.

Sept. 5, 1989.

Richard Grosboll, Neyhart, Anderson, Nussbaum, Reilly & Freitas, P.C., San Francisco, Cal., for plaintiffs.

Julie L. Bertelsman, Seyfarth, Shaw, Fairweather & Jeraldson, San Francisco, Cal., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT

LYNCH, District Judge.

### I.  INTRODUCTION

This matter comes before the Court on cross-motions for summary judgment.  A hearing was held on July 21, 1988, at which time the Court issued a tentative ruling. For the reasons given from the bench and recapitulated below, the Court grants summary judgment to the defendants.

The following facts are not in controversy.  The plaintiffs are all former employees of defendant Caterpillar, Inc.  All were hired as hourly workers at the San Leandro, California plant.  Each at some point was promoted to a salaried management position.  Economic reverses led Caterpillar

to institute a cost-reduction program. As part of this program, plaintiffs were demoted back to hourly positions covered by the local bargaining unit.

Plaintiffs allege they were promised that the demotions were temporary. Instead, each plaintiff was eventually terminated between September 1984 and April 1985.

Plaintiffs seek injunctive and declaratory relief and damages for the benefits due them under the Caterpillar pension and health plans. Both non-union and union employees are covered by plans (hereinafter "management plan" and "union plan") which provide pension and health benefits upon retirement. Plaintiffs allege that the defendants misrepresented their future at the company and the effect of demotion on their retirement benefits. This Court has jurisdiction over their action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1104 *et seq.*[1]

## II. DISCUSSION

### A. *Vesting of pension benefits*

On November 4, 1988, this Court granted partial summary judgment for the defendants on Counts 1 through 3, leaving open only the question of whether the benefits formula was correctly applied to each plaintiff. Defendants' motion for summary judgment on the remaining issue is unopposed.

### B. *Misrepresentations about pension benefits*

In Count 4, plaintiffs maintain that defendants violated their fiduciary duties by misrepresenting the effect of the demotions on their retirement benefits. Because defendants urged them to see Caterpillar through its economic difficulties, plaintiffs allegedly did not pursue other employment in which they could have earned greater benefits. The Court awards summary judgment to the defendants as to Count 4 because beneficiaries have no right to extracontractual damages.

Section 502(a) sets forth the six civil actions by which the terms of a plan and ERISA may be enforced. Although plaintiffs do not identify the provisions on which they rely, sections 502(a)(2) and (3) are the only plausible sources for the relief they seek. The former allows a participant to sue to recover benefits due him under the plan. The Court has already concluded that the plaintiffs are being paid all benefits for which Caterpillar is contractually obligated.

Section 502(a)(2) also allows a participant to apply for "appropriate relief under section 409," which imposes liability for breach of fiduciary duty. However, the Supreme Court has ruled that a fiduciary cannot be personally liable to a participant for these breaches. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In that case, the Court held that Congress did not provide for a cause of action for extracontractual damages caused by the untimely processing of benefit claims. "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* 473 U.S. at 142, 105 S.Ct. at 3090.

The language of section 502(a)(3) arguably allows this type of recovery under the guise of "other appropriate equitable relief." However, the Ninth Circuit has extended the holding of *Russell* to section 502(a)(3):

There is considerable support in *Russell* for the proposition that *no* provision in ERISA authorizes the award of extracontractual damages. First, *Russell* held that the fiduciary duties set forth in section 409 run only to the plan, and not to individual beneficiaries. In so holding, the *Russell* Court used language implying that *all* of the statute's provisions relating to fiduciary duties run only to plans, and not to beneficiaries as individuals.... [The opinion] observes that the

1. All further citations refer to sections of the Act, not the United States Code.

statute focuses not on the direct protection of a beneficiary's interests, but on the protection of the integrity of the plan in which the beneficiary is enrolled. Put another way, ERISA grants no private right of action by a beneficiary *qua* beneficiary.

. . . .

... [I]t appears that Congress used the word "equitable" to mean what it usually means—injunctive or declaratory relief.... For us to add an extracontractual remedy to a list of remedies so strongly contractual in nature would be to step beyond the province of the judiciary and into that of the legislature.

*Sokol v. Bernstein,* 803 F.2d 532, 534, 538 (9th Cir.1986) (citations and footnotes omitted) (damages for beneficiary's emotional distress not available).

In *Drinkwater v. Metropolitan Life Insurance Co.,* 846 F.2d 821 (1988), the First Circuit Court of Appeals reached the same conclusion under circumstances identical to those here, holding that 502(a)(3)(B) did not authorize a beneficiary to sue for damages because of a fiduciary's misrepresentation of the benefits to which he was entitled. " 'Other appropriate relief' should be interpreted to mean what it says—declaratory or injunctive relief, not compensatory and punitive damages." *Id.* at 824. Every other court which has considered misrepresentations has treated it like any other breach of fiduciary duty and reached the same conclusion: ERISA does not provide for extracontractual damages for participants. *See Farrell v. Automobile Club of Michigan,* 870 F.2d 1129, 1133 (6th Cir.1989) (plaintiffs relied on misrepresentation that early retirement plan more generous than regular retirement plan); *Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1265 (10th Cir.1988) (plaintiff relied on misrepresentation that job transfer would not affect pension benefits).

Plaintiffs are clearly claiming for relief which they are not due under the contractual terms of their plan, relief which ERISA will therefore not supply. They ask for what was promised orally, not that which was bargained for collectively.

Plaintiffs themselves refer to these promises as "misrepresentations" of what the plan provided.

Plaintiffs cite cases which indicate that a fiduciary breaches his duty by misrepresenting a plan's benefits. Even if this is true, this does not mean that a *beneficiary* gets *damages* for those representations.

Plaintiffs hope to circumvent *Russell* by invoking the doctrine of equitable estoppel against the defendants, arguing that the plan fiduciaries may not now repudiate promises made earlier even if those promises exceeded their actual entitlement under the terms of the plan. This Court cannot estop the defendants if permitting recovery would be inconsistent with the exclusive remedies of the statute and the intent of Congress. *Cf. Davidian v. Southern California Meat Cutters Union and Food Employees Benefit Fund,* 859 F.2d 134 (9th Cir.1988) (fund may not be estopped from denying benefits not owed under written plan); *Moran v. Aetna Life Insurance Co.,* 872 F.2d 296 (9th Cir.1989) (defendant may not be estopped from denying it is plan administrator with obligations under ERISA, citing *Russell* ).

The Tenth Circuit has taken the same position, noting that "ERISA's express requirement that the written terms of a benefit plan shall govern forecloses the argument that Congress intended for ERISA to incorporate state law notions of promissory estoppel." *Straub,* 851 F.2d at 1265. The *Straub* court followed the lead of the Eleventh Circuit in refusing to allow oral modifications of employee benefit plans:

A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements. This problem would be exacerbated by the fact that these oral agreements often would be made many years before any attempt to enforce them.

*Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) (citations omitted).

Plaintiffs and employees similarly situated receive the many protections of ERISA in exchange for certain rights to sue under previous federal and state law. Congress has decided that they are better off for the bargain. Whatever injustices this scheme may tolerate in isolated instances are more than compensated by the general security provided to pension rights under ERISA—plaintiffs themselves are now enjoying the fruits of rights which Caterpillar could not and cannot divest. If workers deserve further protection, it will be up to Congress to provide it.

### C. *Health benefits*

In Count 5, plaintiffs claim for defendants' failure to provide the health benefits allegedly due them at retirement age. There are three possible arguments against summary judgment on Count 5. The first treats liability for this failure as a breach of fiduciary duty for which plaintiffs should receive extracontractual relief. This argument was rejected above.

■ The second attacks the plan terms themselves by positing that the health benefits *should* have been contractual obligations. The plaintiffs argue that the fiduciaries breached their duty by instituting rules which disqualified them from earning benefits at their voluntary retirement. The plaintiffs were excluded from further participation in the management health plan when they were involuntarily demoted; one must hold a non-union position to participate in the plan. Likewise, they were no longer eligible for retirement health benefits under the union plan when they were discharged entirely.

Under section 404, plan trustees with the discretion to establish benefit conditions must act solely in the interests of participants and beneficiaries. Rules which exclude employees from receiving benefits may not be arbitrary and capricious. *Harm v. Bay Area Pipe Trades Pension Plan Fund,* 701 F.2d 1301, 1305 (1983).

Certainly employers can tailor welfare plans to particular groups of employees; in this case, a management plan for managers. Within that group, a plan trustee may peg benefits to longevity of service. *See Whipp v. Seafarers Vacation Plan,* 832 F.2d 853, 856 (service requirements which employee cannot meet are not inherently arbitrary and capricious).

The cases plaintiffs cite all voided rules under which employees were completely divested of benefits they had already earned. *See, e.g., Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir.1972) (invalidating rule which forfeited all accrued benefits when employee suffered involuntary break in employment). None of the plaintiffs at the time of demotion qualified for retirement health benefits under the management plan's age and service minimums. Nor were plaintiffs deprived of the opportunity to earn health benefits at retirement; after their demotion, they participated in the union plan and continued to earn credit toward a similar package.

Retirees—those who will have no future employer to provide insurance—have a greater need for an ongoing health plan than those workers who leave with the prospect of future employment, and most certainly have a greater need than an employee who transfers from one plan offered by his employer to another. The distinction which the management plan draws between retirees and plaintiffs, who are "transferees," is not arbitrary and capricious.

■ The plaintiffs' termination presents a different case. At the time they were participating in the union plan. Though they did not forfeit any benefits already earned, they no longer had the opportunity to earn health insurance which would survive their separation from Caterpillar. Nevertheless, it makes no difference whether or not this is a reasonable exclusion. ERISA does not give federal courts the authority to review the terms of a pension plan when they are fixed by the collective bargaining process. *White v. Distributors Association Warehousemen's Pension Trust,* 751 F.2d 1068, 1070 (9th Cir.1985), *citing United Mine Workers*

*of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).[2]

At oral argument, counsel for the plaintiffs disputed the fact that the rules of the union's "Group Insurance Plan" were part of a collective bargain. The copy of the plan submitted by plaintiffs begins, "THIS AGREEMENT, entered into as of the 25th day of April, 1983, between CATERPILLAR TRACTOR CO.... and INTERNATIONAL ASSOCIATION OF MACHINISTS A.F. of L.–C.I.O...." Third Grosboll Dec., Ex. 8, at 1. Likewise, the terms of the early retirement offer were established in negotiations between Caterpillar and the local. Second Ziegler Dec. at 3. Plaintiffs offer no evidence to the contrary.

■ The third argument is the simplest: plaintiffs are owed *contractual* benefits because they are still covered. They contend that their eligibility for retirement health insurance did not end when their jobs did; i.e., they can "retire" even after they were fired.

The terms of both plans are unambiguous, and the Court need not refer to any of the other materials or promises that plaintiffs urge upon it in order to understand those terms. The management plan clearly requires its participants to be both non-union and currently employed. *See, e.g.,* Third Grosboll Dec., Ex. 9, "Group Insurance Plan" at 1 (management insurance plan extends to "any retired employee ... who, on the day immediately preceding the retirement from an Employer, was a regular full-time ... payroll employee....") The union plan just as clearly requires its participants to be union members who are currently working for Caterpillar. *See, e.g.,* Third Grosboll Dec., Ex. 8, "Group Insurance Plan Agreement" at 37 ([Retirement medical insurance] "will be provided after his retirement *from active service* for a retired employee if [he] had ten years of credited service....")

This result is no more, and no less, than common sense. *Cf. Moehle v. NL Industries,* 646 F.Supp. 769, 777 (E.D.Mo.1986)

(laid-off employees not eligible for augmented retirement benefits under terms of pension plan because "[r]easonable persons understand that only employees can retire.") None of the materials plaintiffs provide could lead an employee to any other understanding.

### D. *Distribution of plan descriptions*

■ Defendants move for summary judgment on Count 6, which claims for Caterpillar's alleged failure to distribute plan descriptions to the plaintiffs when they were downgraded to the union plan. Plaintiffs make no particular request for relief from this omission; regardless, they have failed to comply with the statutory prerequisites for a cause of action.

Section 104(b) requires a plan administrator to furnish each new participant with a description of his employee benefit plan. Plaintiffs' exclusive remedy for a violation of this requirement is defined in section 502(c), which imposes a $100 penalty [check pocket part] for each day a plan administrator fails to deliver the documents after a participant makes "a request for any information which such administrator is required by this subchapter to furnish...." Plaintiffs offer no proof that they made such a request, nor do they even allege it. Without the request, a participant has no standing to enforce section 104(b). *See Foltz v. U.S. News & World Report,* 663 F.Supp. 1494, 1536 n. 65 (D.D.C.1987).

### E. *Discriminatory discharge*

Defendants move for summary judgment on Count 7, which alleges that Caterpillar violated section 510 by demoting and discharging the plaintiffs in order to reduce the pension benefits to which they were entitled. Although plaintiffs have had ample time in which to conduct discovery on this issue, they offer no evidence of discrimination against any plan participant and do not oppose the motion.

---

**2.** The Court does note that plaintiffs at the time of termination did not qualify for retirement

medical benefits under the union plan's age and service minimums.

**154**

### III. CONCLUSION

For the reasons given above, plaintiffs' motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

IT IS SO ORDERED.