**REHABILITATION INSTITUTE OF CHICAGO, Plaintiff,**

v.

**GROUP ADMINISTRATORS, LTD., Defendant.**

**No. 93 C 907.**

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1994.

Alan I. Ehrenberg, Carl Anthony Pelletti-eri, Jr., and Scott C. Frost, Blatt, Hasenmil-ler, Leibsker & Moore, Chicago, IL, for plaintiff.

James Austin Christman and David M. Simon, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendant.

## ORDER

NORGLE, District Judge.

Before the court are defendant Group Administrators, Ltd.'s ("GAL") objections to Magistrate Judge Rosemond's Report and Recommendation ("Report"). Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred GAL's motion to dismiss and plaintiff Rehabilitation Institute of Chicago's ("RIC") motion for remand to the Magistrate Judge.

The Magistrate Judge conducted a hearing and issued a nineteen-page Report. The Report was filed on December 16, 1993. The Magistrate Judge's Report recommends that this court deny GAL's motion to dismiss and grant RIC's motion for remand. The court has reviewed the Report and arguments of counsel *de novo*. 28 U.S.C. § 636(b)(1). The

court finds the Report to be thorough, accurate, and the decision proper.

The court further finds GAL's objections to be without merit. The material defect in GAL's argument stems from its mischaracterization of RIC's complaint in an attempt to bring the case within the scope of various decisions cited by GAL. Simply stated, GAL is making a federal case out of a state contract case under the guise of the Employee Retirement Income Security Act of 1974 ("ERISA"). RIC files its action under the doctrine of promissory estoppel as recognized under Illinois law. RIC is not, as GAL characterizes, bringing an action against GAL seeking benefits under a health insurance plan governed by ERISA. The cause of action is that GAL, as an entity, breached its promise to provide compensation for medical services rendered by RIC. RIC is not a plan beneficiary or a participant. RIC's cause of action is not focused on the ERISA plan that GAL administers; rather, it is focused on the alleged promise made by GAL and relied upon by RIC. The existence of an ERISA plan is coincidental to the complaint alleged. Thus, the court agrees with the well reasoned decision of the Magistrate Judge's Report.

The court adopts and incorporates the Magistrate Judge's Report and the holdings contained therein pursuant to 28 U.S.C. § 636(b)(1). Accordingly, GAL's motion to dismiss is denied and RIC's motion for remand is granted.

## REPORT AND RECOMMENDATION.

ROSEMOND, United States Magistrate Judge.

**TO THE HONORABLE CHARLES R. NORGLE, SR.,** a District Judge of the United States District Court for the Northern District of Illinois.

Plaintiff Rehabilitation Institute of Chicago commenced this action on January 13, 1993 in the Circuit Court of Cook County, Illinois, Law Division. On February 11, 1993, defendant Group Administrators filed a Notice of Removal petitioning this Court to remove the case pursuant to 28 U.S.C. §§ 1441 and 1443, and a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has contested defendant's Motion to Dismiss and has filed a Motion to Remand the case to state court. **Defendant's motion to dismiss is hereby denied, and plaintiff's motion to remand is granted, for the reasons set forth below.**

## BACKGROUND.

When considering a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded facts as true, and draw all reasonable inferences therefrom in favor of the plaintiff.[1] The motion to dismiss may be granted only if the plaintiff can prove no set of facts upon which relief may be granted.[2] The well-pleaded facts for this case are as follows:

Plaintiff Rehabilitation Institute ("Rehab Institute") is a domestic charitable corporation which maintains a hospital and renders medical services.[3] From April 8 through April 14 and from April 16 through June 6, 1991, Rehab Institute rendered hospital and medical services to Daniel Casey. The total cost of these services was $59,211.46.[4]

On April 15, 1991, Rehab Institute contacted an agent of defendant Group Administrators, the administrator of Casey's health insurance plan under the Employee Retirement Income Security Act of 1974 (ERISA),[5] for the purpose of determining whether or not Casey's care—which apparently was necessitated by self-inflicted injuries—was covered under the ERISA plan. Defendant responded shortly thereafter by assuring Rehab Institute that there was no exclusion for

1. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

2. *First Interstate Bank of Nev. v. Chapman & Cutler,* 837 F.2d 775, 776 (7th Cir.1988) (citing *Conley v. Gibson,* 355 U.S. 41, 45-6, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)).

3. *Complaint,* ¶ 1.

4. *Id.,* ¶¶ 3-4.

5. *See* 29 U.S.C. § 1001, *et seq.*

self-inflicted injuries, and by describing specifically the coverage that was available.[6] As a result of these assurances, Rehab Institute provided Casey with the care he needed.[7]

Subsequently, however, Group Administrators refused to reimburse Rehab Institute for the care it provided, and has continued to do so despite repeated demands for payment. This litigation ensued, with plaintiff maintaining that defendant should be estopped under Illinois law from refusing to remit payment for services that it represented were covered by Casey's ERISA plan. Rather than deny plaintiff's allegations, defendant maintains that plaintiff's complaint fails to state a claim upon which relief may be granted. Specifically, defendant maintains that plaintiff's complaint fails to state a cause of action under Illinois law for equitable estoppel, and that even if the complaint does state a cause of action under Illinois law, the cause of action is preempted by ERISA.[8] Plaintiff concedes that state law claims are generally preempted by ERISA. However, it has attempted to distinguish its claim by arguing that because it is a third-party health care provider who is neither a beneficiary nor an assignee of the ERISA plan, its claim for damages is not "related to" the ERISA plan.[9]

## ANALYSIS.

### A. Sufficiency of the Estoppel Claim.

■ Before proceeding to the preemption issue, the Court must determine whether plaintiff's complaint pleads a cause of action under Illinois law. Rehab Institute's complaint asserts that it is entitled to recover the funds it spent in treating Daniel Casey under the doctrine of promissory estoppel. Promissory estoppel is generally invoked in situations where some performance has been rendered by a party despite the lack of a binding contract.[10] Under Illinois law, the doctrine contains four elements: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the ·promisee; (3) which in fact induced such action or forbearance; and (4) resulting injury or detriment to the promisee.[11] Where all four of these elements are present, the promise will be enforced in order to avoid injustice.[12]

■ In its motion to dismiss, Group Administrators maintains that Rehab Institute failed to allege that any promise was made pertaining to Mr. Casey's coverage and treatment.[13] However, plaintiff's complaint clearly alleges that Group Administrators' agent represented that "coverage was available" for the treatment.[14] In light of the purpose behind Rehab Institute's query (determining whether or not it would be reimbursed by the insurance company for its care of Mr. Casey), this statement satisfies the promise element for purposes of stating a promissory estoppel claim.[15] In this context it is also clear that Group Administrators knew or should have known that its representation would induce action on the part of Rehab Institute (i.e., that Rehab Institute would admit and treat Mr. Casey on the basis of its representation as to available coverage).

6. Complaint, ¶¶ 6–7; see also Plaintiff's Exhibit 2 (letter from Group Administrators to Rehab Institute describing specifics of coverage).

7. Id., ¶ 8.

8. See Employee Retirement Income Security Act of 1974 [hereinafter ERISA] § 514(a), as amended; 29 U.S.C. § 1144(a).

9. Plaintiff's Memorandum in Opposition to the Motion to Dismiss, at 2–3.

10. Lamaster v. Chicago & Northeast Illinois Dist. Council of Carpenters Apprentice & Trainee Program, 766 F.Supp. 1497, 1505 (N.D.Ill.1991).

11. Id.; see also United States v. Iverson, 609 F.Supp. 927, 930 (N.D.Ill.1985); Quake Const.,

Inc. v. American Airlines, Inc., 141 Ill.2d 281, 309–10, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990); Kulins v. Malco, A Microdot Co., Inc., 121 Ill.App.3d 520, 527, 76 Ill.Dec. 903, 910, 459 N.E.2d 1038, 1045 (1984).

12. Iverson, 609 F.Supp. at 930.

13. Defendant's Memorandum in Support of the Motion to Dismiss, at 6.

14. Complaint, at ¶ 7.

15. See Bank Computer v. Continental Ill. Nat'l Bank, 110 Ill.App.3d 492, 497, 66 Ill.Dec. 160, 164–65, 442 N.E.2d 586, 590–91 (1982) (promise essential to a claim of promissory estoppel need not be express, only unambiguous).

The complaint also contains specific allegations that Rehab Institute acted in reasonable reliance on this promise, and that it was injured as a result.[16] Accordingly, Rehab Institute has adequately pled a cause of action under the doctrine of promissory estoppel.[17]

## B. *Preemption.*

██ Having found that plaintiff has stated a cause of action under Illinois law, the Court must determine whether or not that cause of action is preempted under ERISA. ERISA preempts "any and all State laws insofar as they ... relate to any employee benefit plan."[18] This preemption clause has been described as "conspicuous for its breadth."[19] The United States Supreme Court has held that a law "relates to" a benefit plan, and is therefore preempted, if it has even an indirect impact on an ERISA plan.[20] However, the Supreme Court has also noted that ERISA preemption analysis must be "guided by respect for the separate spheres of governmental authority preserved in our federalist system,"[21] and has held that preemption does not occur when a state action affects an ERISA plan in a "tenuous, remote, or peripheral manner."[22]

As noted previously, plaintiff has argued that because it is not an ERISA beneficiary, its state law estoppel claim is not "related to" an ERISA plan for preemption purposes. Defendant's assertions to the contrary notwithstanding, the United States Court of Appeals for the Seventh Circuit has not ruled definitively on the merits of plaintiff's argument.[23] Those federal courts that have, however, have found the issue to be particularly difficult in light of the breadth of ERISA's preemption clause and the economic effects of its extension to state law claims brought by third-party health care providers. These competing concerns have led to a division of authority between the three federal circuits that have considered the issue.[24]

In *Cromwell v. Equicor–Equitable HCA Corp.,*[25] the United States Court of Appeals

---

16. *Complaint* ¶¶ 8–10.

17. Defendant has also argued that Rehab Institute's failure to allege an assignment by Mr. Casey of the insurance benefits renders the complaint insufficient as a matter of law, relying on the Illinois Supreme Court's decision in *Commercial Ins. Co. v. Treasury Bank,* 61 Ill. 482 (1871). This argument confuses the theories underlying estoppel and breach of contract. *Commercial Insurance* involved an action for breach of an insurance policy, not promissory estoppel. Unlike the plaintiff in *Commercial Insurance,* Rehab Institute does not claim any damages under Group Administrators' policy; it claims that Group Administrators' independent promise to *it* (as opposed to its contractual obligations to Mr. Casey) establishes an independent ground for liability. Thus, as Rehab Institute is suing on a promise allegedly made directly to it, no allegation of an assignment is necessary.

18. ERISA § 514(a); 29 U.S.C. § 1144(a).

19. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990) (citing *FMC Corp. v. Holliday,* 498 U.S. 52, 56, 111 S.Ct. 403, 406, 112 L.Ed.2d 356 (1990)).

20. *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 482.

21. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 19, 107 S.Ct. 2211, 2221, 96 L.Ed.2d 1 (1987).

22. *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–7, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

23. *See Decatur Memorial Hospital v. Connecticut General Life Insurance Co.,* 990 F.2d 925, 927 (7th Cir.1993) (declining to address issue of whether state law claim by third party provider was preempted by ERISA because plaintiff failed to plead cognizable claim under state law). This decision refutes defendant's assertion that the issue in this case is "indisputably controll[ed]" by the Seventh Circuit's decision in *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126 (7th Cir.1992), which held only that state law claims brought by ERISA participants and beneficiaries were preempted by ERISA.

24. *Compare Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma,* 944 F.2d 752 (10th Cir.1991) (ERISA does not preempt state law promissory estoppel claim by health care provider against ERISA plan insurer); *Memorial Hosp. System v. Northbrook Life Insurance Co.,* 904 F.2d 236 (5th Cir.1990) (state insurance misrepresentation case not preempted) *with Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991) (plaintiff's state law claims preempted by ERISA).

25. 944 F.2d 1272 (6th Cir.1991), *cert. dismissed* —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).

for the Sixth Circuit held that a third party's claims alleging breach of contract, promissory estoppel, negligence, and bad faith were preempted by ERISA. In reaching its decision, the majority stressed the breadth of ERISA's preemption clause, noting that only state laws whose effect on employee benefit plans was "tenuous, remote, or peripheral" could survive ERISA's preemption provision.[26] Because the plaintiff provider's state law claims were "at the very heart of ERISA's exclusive regulation" and "would, if allowed, affect the relationship between plan principals by expanding coverage beyond the terms of the plan," the majority held that the state law claims' did not fall within the "tenuous, peripheral, or remote effect" exceptions to the preemption clause. The claims were therefore dismissed as preempted.[27]

The United States Court of Appeals for the Fifth Circuit reached a different conclusion in *Memorial Hospital System v. Northbrook Life Insurance Co.*,[28] a case involving a misrepresentation as to coverage in response to a hospital's inquiry. In *Memorial Hospital,* the Fifth Circuit noted the well-settled rule that state law actions based on breach of contract, fraud, or negligent misrepresentation are preempted by ERISA.[29] It refused, however, to extend this rule to preempt the plaintiff's claim under a provision of the Texas Insurance Code prohibiting deceptive or unfair trade practices by insurers.[30]

The Fifth Circuit reached its conclusion only after a careful analysis of the "commercial realities" facing health care providers. Specifically, the court considered the following typical health care scenario:

A patient in need of medical care requests admission to a hospital (or seeks treatment from a doctor). The costs of medical care are high and many providers have only limited budget allocations for indigent care and for losses from patient nonpayment. Naturally, the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of the care to be provided.

If a provider believes that a patient may be covered under a health care plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to admit the patient without further ado.[31]

In light of these realities, the plaintiff hospital argued that the ERISA plan administrator who verifies coverage to a third party health care provider should "recognize the commercial implications to the provider of its assurances," as those assurances represent a promise by the plan to pay expenses pursuant to the plan or to "accept the consequences of a false representation of coverage that the provider reasonably relied upon."[32]

The Fifth Circuit reduced the preemption issue to a single question—"whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan."[33] In reaching its conclusion that ERISA permitted the risk to be shifted by state law to the latter, the court noted first that the allocation of risk among commercial actors doing business in a state was a "classically important" state interest.[34] More importantly, however, the court found that the plaintiff's state law claim raised no issue concerning those matters that Congress,

---

26. *Cromwell,* 944 F.2d at 1276 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

27. *Id.,* at 1276–77.

28. 904 F.2d 236 (5th Cir.1990).

29. *Id.,* at 245 [citing cases].

30. *See* Tex.Ins.Code Ann. art. 21.21 § 16(a) (Vernon, 1981) (prohibiting unfair and deceptive acts or practices in the business of insurance); *see also Hermann Hosp. v. Nat'l Standard Insurance Co.,* 776 S.W.2d 249 (Tex.App.1989).

31. *Memorial Hospital,* 904 F.2d at 246.

32. *Id.*

33. *Id.*

34. *Id.*

through ERISA's preemption clause, intended to be regulated by federal law alone.[35]

Several factors went into this finding. First, the court considered ERISA's policy of minimizing the administrative burdens imposed on ERISA plans by state law. In finding that this policy was not implicated by the state law suit, the court took notice of the Supreme Court's decision in *Fort Halifax Packing Co. v. Coyne*,[36] which held that a state law permitting a one-time recovery from an ERISA plan did not create additional administrative burdens significant enough to require preemption.[37]

Second, the court considered ERISA's goal of protecting the interests of employees and their beneficiaries in employee benefit plans. Rather than promoting this policy, the court found that it "directly defeat[ed]" it by forcing providers, who would bear the risk of non-payment, to require up-front payments or impose other inconveniences.[38]

The final matter considered by the court was the effect of the plaintiff's claim on the relations between the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries. The court noted that this factor was the most important in determining whether the "tenuous, remote, or peripheral" exception should apply in any particular case.[39] Following the lead of the other courts that had addressed the issue, the Fifth Circuit described these relations in terms of the "bargain" struck by Congress through its passage of ERISA, stating that

[employees] receive the many protections of ERISA in exchange for certain rights to sue under previous federal and state law. Congress has decided that they are better off for the bargain. Whatever injustice this scheme may tolerate in isolated instances are more than compensated by the general security provided to pension rights under ERISA ... If workers deserve further protection, it will be up to Congress to provide it.[40]

In the court's view, third party health care providers were not made a party to this bargain.[41] Their state law suits to recover funds expended in reliance on an erroneous representation about a beneficiary's coverage would not, therefore, affect relations between the principal entities.[42]

All of these factors led the court to conclude that Congress did not intend ERISA's preemption provision to "shield [ERISA] beneficiaries from the consequences of their acts toward non-ERISA health care providers" when the cause of action did not relate to the terms or conditions of the ERISA plan and would have only a minimal effect on the plan's administration.[43] The court therefore vacated the district court's order dismissing the hospital's state law claim as preempted by ERISA.[44]

---

35. *Memorial Hospital*, 904 F.2d, at 246.

36. 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1986).

37. *Id.*, at 12, 107 S.Ct. at 2217; *see also Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120–21 (4th Cir.1989); H.R.Rep. No. 93–533, p. 12 (1973).

38. *Memorial Hospital*, 904 F.2d at 247.

39. *Id.*, at 249.

40. *Id.* (quoting *Williams v. Caterpillar, Inc.*, 720 F.Supp. 148, 152 (N.D.Cal.1989), *aff'd.* 944 F.2d 658 (9th Cir.1991)).

41. That Congress did not expect third party health care providers to be parties to this bargain is clear from the fact that these entities have no standing to sue under ERISA. *Id.* (citing *Hermann Hospital v. MEBA Medical & Benefits Plan*,

845 F.2d 1286, 1287 (5th Cir.1988)); *see also T.J. Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991) (citing *Hermann Hospital* in support of holding that third party health care provider only has standing to sue under ERISA when beneficiary has assigned rights).

42. *Memorial Hospital*, 904 F.2d at 250.

43. *Id.*, at 250.

44. The dissent in *Cromwell* followed the same line of analysis as the unanimous Fifth Circuit in *Memorial Hospital*, using a three-part test to conclude that the third-party's state law estoppel claim was not preempted. *See Cromwell*, 944 F.2d at 1283 (Jones, J. dissenting). Specifically, the dissenting judge found that the plaintiff provider's estoppel claim represented a traditional exercise of state authority, would not alter relations between the principal ERISA entities, and

The United States Court of Appeals for the Tenth Circuit reached a similar conclusion in *Hospice of Metro Denver v. Group Health Insurance*.[45] Like the cases discussed above, *Metro Denver* involved a hospital that, in reliance on an ERISA plan's repeated assurances that coverage was available, provided expensive care to an ERISA beneficiary. Like the Fifth Circuit in *Memorial Hospital*, the Tenth Circuit focused on the effect the plaintiff's claim would have on the relations between ERISA entities, as well as its effect on the plan itself.

The *Metro Denver* court observed that ERISA was not intended to preempt state laws that had only a tangential effect on an ERISA plan, even where the law had some economic impact on the plan.[46] It also rejected the plan's argument that any reference to an ERISA plan in a state law complaint automatically "related" the state law action to the plan, compelling preemption and dismissal.[47] Instead, it held that a state law claim was preempted by ERISA only where the claim arises out of the administration of the plan.[48] It then concluded, like the Supreme Court in *Fort Halifax* and the Fifth Circuit in *Memorial Hospital*, that a state law judgement resulting in the plan's having to pay a lump sum amount had an insufficient effect on the plan to justify preemption.[49]

This conclusion, combined with the court's recognition of the commercial realities discussed in *Memorial Hospital* and its finding that preemption of third party providers' state law claims would not further ERISA's goal of protecting beneficiaries, led the court to reject the defendant's preemption argument and let the claim proceed to trial.[50]

As the Seventh Circuit noted in *Decatur Memorial Hospital*, cogent arguments have been made in support of both sides of this issue.[51] We find that the position taken by the Fifth and Tenth Circuits strikes an appropriate balance between ERISA's preemptive goals and the economic realities of the health care industry. Accordingly, we hold that Rehab Institute's equitable estoppel claim is not preempted by ERISA. In reaching this conclusion we take note of the same factors which drove the Fifth and Tenth Circuits to their findings against preemption. Through its recognition of an action for promissory estoppel, Illinois has decided that the risk of loss from misstatement in the commercial arena ought to lie with the putative promisor, rather than with the party who justifiably relies on the erroneous promise. This risk allocating policy clearly is a traditional assertion of state authority.

Because Rehab Institute is a non-ERISA entity, recognition of its state law claim in this case will have little or no impact on the relations between the principal ERISA entities. Recognition of this claim will also have a negligible impact on the plan's administration, as the plan faces only the prospect of a lump-sum payment if it loses at trial.[52] In short, Rehab Institute's claim will have no more than a tenuous and remote impact on the Group Administrators' plan. Preempting claims such as Rehab Institute's will therefore do little to promote ERISA's goal of minimizing administrative burdens on ERISA plans.

The negative implications of preemption in this case are clear, however. Unlike plan participants and beneficiaries, third party health care providers are non-ERISA entities that have no access to information pertaining to plan benefits. As a result, they are completely reliant on outside sources for information. Refusing to recognize state law estoppel claims for erroneous promises that coverage is available will shift the entire risk of non-payment to the provider, who in turn

would have at most a minimal effect on the ERISA plan itself.

45. 944 F.2d 752 (10th Cir.1991).

46. *Id.*, at 754 (citing *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984), *cert. denied* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985)).

47. *Metro Denver*, 944 F.2d at 754.

48. *Id.*, at 755 (citing *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1404 (9th Cir.1988)).

49. *Metro Denver*, 944 F.2d at 755.

50. *Id.*

51. *Decatur Memorial Hospital*, 990 F.2d at 927.

52. *Cf. Fort Halifax Packing*, 482 U.S. at 12, 107 S.Ct. at 2217.

may be forced to increase prices, require time-consuming pre-admission insurance checks, or refuse treatment entirely in certain situations.[53] Such a result runs directly counter to ERISA's goal of protecting plan-participants and beneficiaries, and harms the plans themselves by leading to increased costs in all instances.[54]

In light of these factors, we find that pre-emption of Rehab Institute's claim in this case would do nothing to promote the policies underlying ERISA. Instead, preemption here would create an artificial shield allowing ERISA plan administrators to avoid completely the economic consequences of their promises to non-ERISA third parties. The United States Court of Appeals for the Second Circuit had the following to say about such shields:

> [The conclusion that ERISA's preemption clause is limited] follows as a matter of common sense from the fact that ERISA plan members and managers are bound to engage in myriad transactions that Congress never considered when it drafted § 514. A preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction.[55]

In light of the foregoing, we hold that Rehab Institute's promissory estoppel claim is not related to Group Administrator's ERISA plan, and is not preempted by ERISA.[56]

## C. *Plaintiff's Motion for Remand.*

■ Rehab Institute has moved to have this case remanded to the Circuit Court of Cook County, the state court in which it was originally filed. Rehab Institute contends that this Court lacks jurisdiction because the complaint fails to state a federal issue on its face. Group Administrators counters by arguing that its preemption defense raises the federal issue necessary to this Court's jurisdiction over the case.

A case may be removed from state to federal court only if the case could have been brought in federal court originally.[57] The parties in this case are not diverse. Original federal jurisdiction in this case, therefore, may be based only on "federal question" jurisdiction.[58] It is fundamental that federal question jurisdiction exists only where the plaintiff's complaint raises a federal issue;[59] federal jurisdiction generally may not be based on a defense to the action.[60]

The Supreme Court has carved out a narrow exception to this rule, permitting federal courts to exercise jurisdiction over state law claims that have been completely preempted by Congress.[61] Under this "complete preemption" doctrine, the preempted state law claim is re-characterized as a federal law claim for jurisdictional purposes, permitting

**53.** *See Decatur Memorial*, 990 F.2d at 927.

**54.** *Memorial Hospital*, 904 F.2d at 247.

**55.** *Rebaldo v. Cuomo*, 749 F.2d 133, 138, (2d Cir.1984), *cert. denied* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

**56.** Defendant also argued that Rehab Institute lacked standing under ERISA to bring this action, as Mr. Casey made no assignment of his benefits under the plan. In light of the foregoing analysis, this argument lacks merit. Rehab Institute's primary contention has been that this is not an ERISA lawsuit. Because this suit was brought pursuant to state law in order to enforce a state law right independent of ERISA, defendant's argument that there was no standing under ERISA is without significance.

**57.** 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original

jurisdiction, may be removed by the defendant ... to the district court of the United States[.]"

**58.** 28 U.S.C. § 1331 confers jurisdiction in the federal district courts over all cases arising under the Constitution, laws, or treaties of the United States.

**59.** *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1; 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir.1989), *cert. denied* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).

**60.** *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2846.

**61.** *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *Lister*, 890 F.2d at 943.

the federal court to exercise removal jurisdiction.[62]

In light of our finding that plaintiff's state law claim in this case is not preempted by ERISA, the complete preemption doctrine is unavailable as a basis for jurisdiction. Therefore, as no federal question appears on the face of Rehab Institute's complaint, we lack jurisdiction over the case.

**Recommendation.** The District Judge should enter an Order denying the defendant's motion to dismiss, and granting the plaintiff's motion to remand this case to the Circuit Court of Cook County.[63]

**So Recommended.**

---

**62.** *Lister,* 890 F.2d at 943.

**63.** Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must file their objections to the Report and Recommendation with The Honorable Charles R. Norgle, Sr. within 10 days after being served with a copy of the report. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's report. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See also, Provident Bank v. Manor Steel Corporation,* 882 F.2d 258, 261 (7th Cir.1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's report).