SIDNEY WEISER, Plaintiff-Appellant, v. UNITED FOOD AND COMMERCIAL WORKERS UNION AND EMPLOYERS MIDWEST HEALTH BENEFITS FUND, Defendant-Appellee.

First District (2nd Division)    No. 1—94—2183

Opinion filed June 30, 1995.

Sidney R. Berger, of Chicago, for appellant.

Jonathan D. Karmel, of Karmel & Gilden, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff, Dr. Sidney Weiser, brought this action against defendant, United Food and Commercial Workers Union and Employers Midwest Health Benefits Fund, to recover the cost of medical services provided to one of its former members, Deniece Wood (Wood). Defendant is a multi-employer benefit plan governed by the Employee Retirement Income and Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (1988)). On defendant's motion, the circuit court dismissed the action with prejudice based on its conclusion that plaintiff's claims were preempted by section 1144(a) of ERISA. For the following reasons, we reverse the judgment of the circuit court.

Plaintiff, a physician licensed to practice podiatric medicine in Illinois, alleged that Wood sought foot care treatment from him. After determining that Wood required surgery, plaintiff contacted defendant to verify that Wood was insured for the procedure. On February 24, 1993, defendant confirmed that Wood was its insured and advised plaintiff that a second opinion was required to receive coverage. Following plaintiff's instructions, Wood obtained a written verification of defendant's oral response, dated February 24, 1993. A second medical opinion, concurring with plaintiff's diagnosis, was obtained and

the procedure was performed. Plaintiff also provided related services to Wood in March 1993.

In a letter dated May 12, 1993, defendant denied plaintiff's claim for services provided in March 1993, because Wood's employment ceased on February 6, 1993, and her coverage terminated on February 28, 1993. In a letter dated May 13, 1993, defendant denied plaintiff's claim for services provided in February 1993, including the surgery, because Wood failed to work the minimum number of hours necessary for coverage in February 1993. When plaintiff sought reconsideration of the denial of coverage, defendant responded by letter that at the time of plaintiff's inquiry, February 24, 1993, it was not aware that Wood had quit her job on February 6; defendant learned this information on approximately March 10, 1993, from Wood's employer; in its May 12 letter, defendant mistakenly assumed that Wood had worked at least 24 hours in February; having not worked the minimum number of hours in February, Wood lost her coverage on January 31, 1993; and defendant had not given plaintiff a guarantee that benefits would be in effect at the time of surgery because, since it was not Wood's employer, such a guarantee would have been impossible.

On September 3, 1993, plaintiff filed a four-count complaint seeking damages of $4,920 under theories of estoppel, guaranty, breach of an oral contract, and negligent misrepresentation. The circuit court dismissed the cause with prejudice, specifically finding that plaintiff's claims were preempted by ERISA.

## I

■ Plaintiff contends that the circuit court erred in dismissing his claim because a third-party health care provider may pursue a state claim against an ERISA funded insurer. Section 1144(a) of ERISA states that "except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." (Emphasis added.) (29 U.S.C. § 1144(a)(1988).) The Supreme Court has consistently interpreted the preemption clause expansively. (*Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 47, 95 L. Ed. 2d 39, 47, 107 S. Ct. 1549, 1552-53; *Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 484.) "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 501, 103 S. Ct. 2890, 2899-900.) In the same opinion, the Supreme Court tempered that broad

statement by noting that state actions which affect plans in "too tenuous, remote, or peripheral a manner" are not preempted. (*Shaw*, 463 U.S. at 100 n.21, 77 L. Ed. 2d at 503 n.21, 103 S. Ct. at 2901 n.21.) ERISA clearly preempts a state cause of action brought by an ERISA plan member or beneficiary against an insurer. (*Memorial Hospital Systems v. Northbrook Life Insurance Co.* (5th Cir. 1990), 904 F.2d 236, 245.) However, this appeal is raised by a third party which provided unreimbursed medical services in reliance upon an ERISA insurer's alleged assurance that the services would be covered. The Supreme Court and the seventh circuit have not, as of yet, determined whether a state action arising out of these circumstances would be preempted by ERISA. Three federal circuits have considered this precise question, under similar fact patterns, and reached different conclusions.

The fifth circuit (*Memorial*, 904 F.2d 236) and the tenth circuit (*Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.* (10th Cir. 1991), 944 F.2d 752) ruled that such state claims are not preempted by ERISA, and two northern district of Illinois courts adopted their reasoning. (*Rehabilitation Institute v. Group Administrators, Ltd.* (N.D. Ill. 1994), 844 F. Supp. 1275; *Parkside Lutheran Hospital v. R.J. Zeltner & Associates, Inc.* (N.D. Ill. 1992), 788 F. Supp. 1002.) These courts found that third-party provider claims did not "relate to" ERISA plans, did not affect the relationships among ERISA's named entities, did not frustrate congressional intentions, and did implicate important state interests.

Third-party provider actions were found not to relate to ERISA plans because the claims were based upon acts of misrepresentation rather than the terms of a benefit plan. In providing confirmation of insurance coverage, the ERISA insurers created duties apart from and outside of those in the plan contract. (*Parkside*, 788 F. Supp. at 1006.) The third-party claims arose from those breached duties and did not seek to modify, expand, or enforce rights under the plan contract. (*Hospice*, 944 F.2d at 754; *Memorial*, 904 F.2d at 246.) The *Hospice* court stated:

> "An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan. Preemption in this case would stretch the 'connected with or related to' standard too far." (*Hospice*, 944 F.2d at 756.)

Additionally, a claim may seek damages based upon the amount of benefits due under the plan without "relating to" the plan. *Hospice*, 944 F.2d at 755.

The *Memorial* court noted that the effect of an action on the relations between the principal ERISA entities (the employer, the plan, and its fiduciaries and beneficiaries) is important to determine if the "tenuous, remote, or peripheral" exception should apply. In its analysis, the court focused on the ERISA legislation and the protections which health care plan employees and beneficiaries received in exchange for forfeiting the right to seek certain forms of redress. Third-party health care providers were not part of this "bargain" and, as a result, their efforts to recover from one of the parties would not affect the relations between the primary entities under the statute. *Memorial*, 904 F.2d at 249.

Also, third-party claims were found not to frustrate congressional concerns about administrative efficiency and plan member protection. Section 514(a) was intended to "minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." (*Ingersoll-Rand*, 498 U.S. at 142, 112 L. Ed. 2d at 486, 111 S. Ct. at 484.) However, a one-time payment triggered by a single event does not create additional administrative burdens significant enough to require preemption. *Fort Halifax Packing Co. v. Coyne* (1987), 482 U.S. 1, 12, 96 L. Ed. 2d 1, 12, 107 S. Ct. 2211, 2218; *Memorial*, 904 F.2d at 247; *Rehabilitation*, 844 F. Supp. at 1282; *Hospice*, 944 F.2d at 755.

ERISA was also designed to "promote the interests of employees and their beneficiaries." (*Shaw*, 463 U.S. at 90, 77 L. Ed. 2d at 497, 103 S. Ct. at 2896.) Courts have found that preempting third-party provider claims would serve to undermine this goal. Medical providers have no access to information pertaining to plan benefits outside of the insurer's statements. If medical providers are forced to bear the risk that verifications of coverage are inaccurate and will not result in reimbursement, they may be forced to increase prices or require payment before providing services. Such an outcome would be detrimental to employees and be inconsistent with congressional intentions. *Hospice*, 944 F.2d at 755; *Memorial*, 904 F.2d at 247; *Rehabilitation*, 844 F. Supp. at 1282-83.

The *Memorial* and *Rehabilitation* courts also considered state court to be a proper venue for these claims because the actions touch upon an important state concern. When an insurer verifies coverage and a medical provider acts upon that statement, a risk of nonpayment is created. That risk either remains with the medical provider or is shifted to the insurer. The allocation of such risks between commercial entities is "a classically important state interest" and is a proper question for the state court to address. (*Memorial*, 904 F.2d at

246; *Rehabilitation Institute*, 844 F. Supp. at 1282.) The *Memorial* court added that no issues were raised concerning those matters that Congress, through ERISA's preemption clause, intended to be regulated by federal law alone. *Memorial*, 904 F.2d at 247.

In contrast to the fifth and tenth circuits, the sixth circuit, facing a similar fact scenario, ruled that third-party state claims are preempted by ERISA. (*Cromwell v. Equicor-Equitable HCA Corp.* (6th Cir. 1991), 944 F.2d 1272, *cert. dismissed* (1992), 505 U.S. 1233, 120 L. Ed. 2d 931, 113 S. Ct. 2.) After citing the relevant Supreme Court principles, the court declared that the appellant's claims sought to recover benefits from the health care plan. As a result, the claims were "at the heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan." (*Cromwell*, 944 F.2d at 1276.) Justice Jones, in dissent, criticized the majority's lack of analysis and argued, following *Memorial*, that the insurer's representations created a quasi-contractual obligation outside of the plan. *Cromwell*, 944 F.2d at 1282, 1285 (Jones, J., dissenting).

Defendant also cites *Hermann Hospital v. MEBA Medical & Benefits Plan* (*Hermann II*) (5th Cir. 1992), 959 F.2d 569, which reached the same result as *Cromwell*. However, the *Hermann II* court did not conduct an analysis of the issue, but rather applied the law-of-the-case doctrine to a prior preemption ruling in *Hermann Hospital v. MEBA Medical & Benefits Plan* (*Hermann I*) (5th Cir. 1988), 845 F.2d 1286, 1290. During the intervening four years, the fifth circuit issued *Memorial* and distinguished *Hermann I* for its assumption that a medical provider's claim was dependent on, and derived from, the rights of plan beneficiaries to recover under the plan. *Memorial*, 904 F.2d at 249 n.20.

Defendant's arguments rely upon the general Supreme Court principle of expansive preemption clause interpretation. *Cromwell*, which lacks a detailed analysis of the competing interests involved, similarly depends upon that principle. On the other hand, four courts confronting the identical issue under similar factual circumstances conducted a thorough analysis and concluded that third-party provider claims are not preempted by ERISA. As the *Rehabilitation* court stated, "the position taken by the Fifth and Tenth Circuits strikes an appropriate balance between ERISA's preemptive goals and the economic realities of the health care industry." *Rehabilitation*, 844 F. Supp. at 1282.

■ We opt to follow that lead. The instant action arises from defendant's alleged act of misrepresentation. Plaintiff is not attempt-

ing to enforce rights under the plan contract. Plaintiff's one-time action will not affect the relations between the primary plan entities or impose an undue administrative burden on defendant. Furthermore, if plaintiff must bear the risk that verifications of coverage from insurers are inaccurate, he may be forced to pass the expense on to his patients in the form of higher charges or to require payment before performing services. Accordingly, plaintiff is not preempted from pursuing his state action in the circuit court.

## II

■ Defendant also argues that state claims based on oral modifications of ERISA plans are preempted. (*Russo v. Health, Welfare & Pension Fund, Local 705* (7th Cir. 1993), 984 F.2d 762, 767.) This argument presumes that plaintiff's claim arises from the plan contract. However, as discussed above, plaintiff's action is based on duties which were created by defendant's oral and written representations. As a result, plaintiff's claim is not preempted by the general rule relating to oral modifications of an ERISA plan.

The judgment of the circuit court is reversed and the case is remanded.

Reversed and remanded.

HARTMAN and McCORMICK, JJ., concur.