**HERMANN HOSPITAL,**
Plaintiff–Appellant,

v.

**MEBA MEDICAL & BENEFITS PLAN,**
Defendant–Appellee.

No. 87–2672.

United States Court of Appeals,
Fifth Circuit.

May 26, 1988.

Gail Magers, Houston, Tex., for plaintiff-appellant.

Andrew R. Harvin, Houston, Tex., Bettina B. Plevan, Elizabeth A. Alcron, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant-appellee.

Before GARWOOD and JONES, Circuit Judges, and FISHER *, District Judge.

EDITH H. JONES, Circuit Judge:

This action was brought by Hermann Hospital of Houston, Texas against MEBA pursuant to the Employee Retirement Income Security Act of 1974, § 401 *et seq.*, 29 U.S.C. § 1001 *et seq.*, to recover benefits owed to Patricia Nicholas under the terms of an ERISA-governed welfare benefit plan. Hermann's amended complaint also asserts state common law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud. The district court dismissed the complaint pursuant to Fed.R.Civ.Proc. 12(b)(1) and 12(b)(3) for lack of subject matter jurisdiction after concluding that the hospital did not have standing to sue under ERISA either in its own right or derivatively as an assignee of Patricia Nicholas. The district court further found that Plaintiff's common law claims were preempted by ERISA, and that therefore diversity jurisdiction could not be maintained. We agree that the state claims are preempted by

---

* District Judge of the Eastern District of Texas, sitting by designation.

ERISA, but we also hold that if Hermann was an assignee of Mrs. Nicholas's benefits, it had standing under ERISA to sue for them. We affirm in part, reverse in part, and remand.

## FACTS

Hermann Hospital rendered $341,920.96 in medical services to Patricia Nicholas, the spouse of a participant in MEBA's health plan. Mrs. Nicholas was admitted to Hermann Hospital on May 13, 1982, and remained there until her death six months later. Upon entering the hospital, Nicholas signed an assignment of benefits to Hermann Hospital. At that time, a MEBA agent verified Nicholas's coverage to the hospital. During Nicholas's hospitalization and after her death, the hospital made unsuccessful efforts to obtain payment from MEBA, which asserted that the claim had neither been approved nor denied, but was being "investigated." After two years, the hospital brought this suit, premising federal jurisdiction on ERISA and diversity grounds.[1]

## ANALYSIS

Hermann asserts standing to sue either as a "non-enumerated party" under 29 U.S.

C. § 1132(a) or as an assignee of the rights of Mrs. Nicholas, who is an enumerated party according to the same provision. We address these contentions in turn.

### I. *Independent Standing*

Section 502 of ERISA, 29 U.S.C. § 1132(a) (1976), provides that a civil action may be brought under ERISA by a plan "participant," "beneficiary," or "fiduciary," or by the Secretary of Labor.[2] That provision, 29 U.S.C. § 1132(e)(1), also confers exclusive jurisdiction on federal courts to hear these actions. Hermann does not contend that it falls among the parties statutorily authorized by § 1132(a). Whether standing to sue under ERISA is exclusive to these three types of parties has been the subject of much debate,[3] and the federal appeals courts, as well as the parties to this case, differ on the issue.

The Ninth Circuit has held that certain "non-enumerated" parties have standing to sue [4] based on a three-part test for determining "implied" statutory authority to sue.[5] *Fentron Industries v. National Shopmen Pension Fund*, 674 F.2d 1300,

---

1. Contrary to its assertions here, the hospital did not assert federal common law claims below and is now precluded from raising federal question jurisdiction as a basis for standing.

2. Section 502 of ERISA, 29 U.S.C. § 1132(a) (1976), provides:

   A civil action may be brought—
   (1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
   (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title ...

3. *See, e.g.,* Note, *Employee Benefits Law: Securing Employee Welfare Benefits Through ERISA,* 61 Notre Dame L.Rev. 551 (1986); Note, *ERISA: To Sue or Not to Sue—A Question of Statutory Standing,* 19 Univ.Mich.J.L. Reform 239 (1985).

4. The Sixth and Seventh Circuits have also held that pension plans have standing to sue under certain circumstances. These cases seem to be founded on § 1132(d), which authorizes an ERISA plan "to sue and be sued under this subchapter." *See Peoria Union Stock Yards Co. Retirement Plan v. Penn. Mutual Life Ins. Co.,* 698 F.2d 320, 326 (7th Cir.1983) (pension plans have standing to sue under ERISA for breach of fiduciary duty); *Michigan United Food and Commercial Workers' Unions v. Baerwaldt,* 767 F.2d 308 (6th Cir.1985) (a pension fund has standing to sue for declaratory relief that a state statute was preempted by ERISA). We express no opinion on the standing of a plan under § 1132.

5. *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300, 1304 (9th Cir.1982). The three-part test, adopted by the *Fentron* court from *Data Processing Service Organization v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184

1304 (9th Cir.1982). In that case, an employer whose employees were covered by an ERISA plan was held a non-enumerated party with standing to sue for a union pension fund's cancellation of certain benefits to the company's employees. Courts agreeing with *Fentron* reason that the correct inquiry in defining standing under a federal statute "is not whether the national legislature affirmatively intended to bar suits by ... [parties] not specifically identified in § 1132[a]'s laundry list, but whether Congress affirmatively intended that unnamed others should be permitted access to the federal forum." *Intern. Union of Bricklayers v. Menard & Co.*, 619 F.Supp. 1457, 1460 (D.R.I.1985). *See also Airco Industrial Gases v. Teamsters Health and Welfare Pension Fund*, 618 F.Supp. 943 (D.Del.1985).

The Second Circuit has rejected the "non-enumerated party" standing concept. *Pressroom Unions Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir.1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).[6] The court criticized *Fentron's* analysis:

> In our view, the *Fentron* court applied an inappropriate standard in resolving

this issue. We focus not on whether the legislative history reveals that Congress intended to prevent actions by employers or other parties, but instead on whether there is any indication that the legislature intended to grant subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132(e)(1). 700 F.2d at 892.

The court's decision was founded on the jurisdictional principle stated by the Supreme Court in *Rice v. Railroad Co.*, 66 U.S. (1 Black) 358, 374, 17 L.Ed. 147 (1861), and affirmed in later decisions[7], that "only Congress is empowered to grant and extend subject matter jurisdiction of the federal judiciary, and ... courts are not to infer a grant of jurisdiction absent clear legislative mandate." *Pressroom*, 700 F.2d at 888. Applying this rule, the silence of ERISA's legislative history[8] concerning the scope of §§ 1132(a) and (e)(1) indicates that it should be considered an exclusive jurisdictional grant.[9]

We may prefer the reasoning of the Second Circuit without endorsing the particular result it reached.[10] Where Congress has defined the parties who may bring a civil action founded on ERISA, we are

(1970), requires that a plaintiff must (1) suffer an injury in fact, (2) fall arguably within the zone of interests protected by the statute allegedly violated and (3) show that the statute itself does not preclude suit. 674 F.2d at 1304.

**6.** *See Northeast Dept. ILGWU v. Teamsters Local U. No. 229*, 764 F.2d 147, 151–55 (3d Cir.1985). *ILGWU* held specifically that § 1132 does not authorize federal jurisdiction over a suit brought by one pension fund and its trustee against another pension fund in a dispute over benefits owed arguably to a participant in both funds. In three separate opinions, the panel nevertheless found jurisdiction over the action.

**7.** *See, e.g., Dalehite v. United States*, 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 13–18, 101 S.Ct. 2615, 2622–25, 69 L.Ed.2d 435 (1981).

**8.** Both the Second and Ninth Circuits agree that no specific guidance as to Congress' intention regarding standing of non-enumerated parties can be divined from the legislative history.

**9.** One case has held that a health care provider possesses no ERISA standing in its own right. *Cameron Manor, Inc. v. United Mine Workers of*

*America*, 575 F.Supp. 1243 (W.D.Penn.1983). The court cited the Supreme Court's opinion in *Franchise Tax Board of California v. Construction Laborer's Vacation*, 463 U.S. 1, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983), for the proposition that federal jurisdiction under § 1132(a)(1)(B) "is limited to suits by the entities specified in the statute." 575 F.Supp. at 1245. Although we adopt the literal construction of § 1132(a) and agree that a health-care provider may not sue as a non-enumerated party, we disagree with that court's analysis of *Franchise Tax Board*. The Supreme Court did not squarely address the scope of § 1132(a) and focused instead on general federal question jurisdiction. The Court certainly did not address the status of an assignee of health care benefits, an issue we address in part II hereof.

**10.** *Pressroom* ultimately denied standing to a pension fund and in so doing was compelled to distinguish the language of 29 U.S.C. § 1132(d) that a fund "may sue and be sued under this subchapter ..." *But see* cases cited at n. 4, *supra*. We express no opinion on the standing of pension funds under § 1132.

loathe to ignore the legislature's specificity. Moreover, our previous decisions have hewed to a literal construction of § 1132(a). In *Yancy v. American Petrofina, Inc.*, 768 F.2d 707, 708 (5th Cir.1985), this court refused to allow the plaintiff to bring an ERISA action after determining that he was not a plan "participant" within the meaning accorded that term by the statute. *See also Joseph v. New Orleans Elec. Pension*, 754 F.2d 628 (5th Cir.1985) (retirees who had chosen to receive lump-sum retirement benefits in lieu of a continuing monthly benefit found not "participants" within meaning of ERISA and thus lacked standing to sue); *Jackson v. Sears Roebuck & Co.*, 648 F.2d 225 (5th Cir.1981); *Nugent v. Jesuit High School of New Orleans*, 625 F.2d 1285 (5th Cir.1980) (former employee lacked standing because his benefits were not vested at the time of his termination, and he therefore could not be characterized as a "participant").[11] Although our evaluation of the ERISA standing issues in these cases was limited to determining whether the plaintiffs fit into an enumerated class of litigants under § 1132(a), the analysis is consistent with rejection of *Fentron's* implied statutory standing concept. We therefore conclude that Hermann Hospital has no standing as a "non-enumerated party" to pursue an action described in § 1132(a).

## II. *Derivative Standing*

The hospital alternatively asserts that it has derivative standing to sue because it is the assignee of Nicholas's health benefits. This contention assumes that ERISA allows the assignment of health care benefits and that a valid assignment has been made. We agree with the first assumption but are unable to decide the second one, as it raises issues on which the district court did not rule.

Lacking authority from our circuit, we find persuasive the Ninth Circuit's decision, in *Misic v. Building Service Employee's Health*, 789 F.2d 1374, 1377 (9th Cir.1986), that ERISA health care benefits are assignable. ERISA contains no anti-assignment provision with regard to health care benefits of ERISA-governed medical plans, nor is there any language in the statute which even remotely suggests that such assignments are proscribed or ought in any way to be limited. As *Misic* notes, the existence of an elaborate and complex statutory anti-assignment clause for ERISA pension benefits makes significant the complete absence of an anti-assignment clause applicable to ERISA health benefits, *see Misic*, 789 F.2d at 1376, especially in light of the Supreme Court's recognition of ERISA as "comprehensive and reticulated." *Nachman Corp. v. Pension Benefits Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354, 358 (1980). Moreover, the purpose of ERISA's proscription on assignment of pension benefits, "[t]o further insure that the employees' accrued benefits are actually available for retirement purposes,"[12] would not be served by applying it to health care benefits. An assignment to a health care provider facilitates rather than hampers the employee's receipt of health benefits.[13]

---

11. We recently found it unnecessary to resolve the issue of a union's standing to sue under § 1132(a) because three enumerated parties were joined as plaintiffs with the union pursuing an ERISA case. *American Federation of Unions, Local 102 v. Equitable Life Ass. Soc. of the United States*, 841 F.2d 658, 665–666 (5th Cir.1988).

12. H.R.Rep. No. 807, 93rd Cong., 2d Sess. 68 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4670, 4734 *and in* 2 Sub.Comm. on Labor of the Senate Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, at 3188 (1976).

13. To deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees' health and welfare benefit coverage. Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative, indirect and uncertain as they are, would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front." The providers are better situated and financed to pursue an action for

789 F.2d at 1376–77. These factors comprise sufficient evidence of Congress' intention to allow the assignment of health benefits.[14]

Although we conclude that Hermann would have standing to sue in federal court as an assignee of a plan beneficiary under 29 U.S.C. § 1132(a), we cannot determine on the appellate record whether Hermann was an assignee. Mrs. Nicholas apparently executed a form assignment of benefits when she entered the hospital, but MEBA contends such assignments were not permitted by its plan at that time. Hermann responds that even if the executed assignment is invalid, MEBA is estopped, by its deceptive assurances of coverage, from denying Hermann's assignment. Hermann alternatively implies that, regardless of its specific plan provision, MEBA had in practice accepted assignments to health care providers. The district court did not address any of these issues, and we leave them for the district court on remand.[15]

### III. Preemption of State Law Claims

▪ ERISA preempts all state law claims which "relate to any employee benefit plan,"[16] although limited exceptions to this broad preemption were also enacted.[17] The narrow issue in this case is whether the state common law causes of action for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud alleged by Hermann Hospital "relate

to" the MEBA plan, or whether they are too "tenuous, remote and peripheral" to the plan to be preempted.

The Supreme Court recently decided that state common law claims for tortious breach of contract, breach of fiduciary duty, and fraud in the inducement, brought by a beneficiary who alleged failure to pay benefits under an ERISA-governed plan were preempted by ERISA. Such claims were found to be related to an employee benefit plan and were based upon state law of general application and not a law regulating insurance. *Pilot Life Ins. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see also Metropolitan Life Ins. Co. v. Taylor*, —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (employee's common law contract and tort claims arising from insurer's allegedly improper termination of benefits under ERISA plan preempted). These cases are controlling,[18] and the hospital's attempt to distinguish them on the grounds that it is not—as were the plaintiffs in those cases—an enumerated party under § 1132(a), is unconvincing and contradictory of its position as an assignee. Adopting Hermann's position would allow parties that lacked standing to sue under ERISA to circumvent its enforcement provisions by filing suit in state courts under state law. Arguably, they could thus obtain advantages *denied* to parties plaintiff enumerated under § 1132(a). This is an untenable result.

---

benefits owed for their services. Allowing assignees of beneficiaries to sue under § 1132(a) comports with the principle of subrogation generally applied in the law. *See generally Misic, supra*, at 1378–79.

**14.** The Third Circuit stated in *ILGWU*, 764 F.2d at 154 n. 6, that assignees do not have standing because they are not expressly enumerated in § 1132(a)(1)(B). We do not follow this conclusion because it is *dicta*, the court having found that no assignment had occurred. Further, as *Misic* cogently pointed out, the principle that the assignee stands in the shoes of his assignor is different from and more applicable to our case than the principle that an assignment cannot create in the assignee rights not held by the assignor. *Misic*, 789 F.2d at 1378, n. 4. The latter principle was erroneously invoked in *ILGWU's* analogy to a case holding that diversity jurisdiction cannot be created by assignment. *ILGWU*, 764 F.2d 154, n. 6.

**15.** Hermann urges that we remand for trial on the merits, on the theory that the jurisdictional issue of its status as an assignee is intertwined with the substance of its claim against MEBA. *See Clark v. Tarrant County*, 798 F.2d 736, 741–42 (5th Cir.1986). We are not prepared to draw this conclusion on the record as it stands and leave this decision for the district court.

**16.** § 514(a), 29 U.S.C. § 1144(a).

**17.** § 514(b), 29 U.S.C. § 1144(b).

**18.** The hospital's citation to *Crawford v. La-Boucherie Bernard, Ltd.*, 815 F.2d 117, 121 (D.C. Cir.1987), in support of its position is utterly erroneous. *Crawford* held that ERISA may be enforced by equitable remedies against a violator; there was not a word in *Crawford* about the existence of state law claims as against a preemption charge.

The district court's decision regarding preemption is affirmed.[19]

The decision of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

---

19. Plaintiff also suggests that dismissal of this action by the district court constituted an unconstitutional denial of access to the courts. Our disposition renders it unnecessary to address this novel claim.