**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-50860**

---

**TEXAS LIFE, ACCIDENT, HEALTH & HOSPITAL**
**SERVICE INSURANCE GUARANTY ASSOCIATION,**

**Plaintiff-Appellant,**

**VERSUS**

**GAYLORD ENTERTAINMENT COMPANY, formerly known as**
**Oklahoma Publishing Company, ET AL.,**

**Defendants,**

**GAYLORD ENTERTAINMENT COMPANY, formerly known as**
**Oklahoma Publishing Company, ET AL.,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Western District of Texas

January 24, 1997

Before REYNALDO G. GARZA, JOLLY and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

A state insurance guaranty association brought suit against ERISA[1] plan administrators for breach of fiduciary duty, alleging that the plan administrators imprudently bought investments from a failing insurance company. We hold that a guaranty association which receives a valid assignment of an ERISA fiduciary breach

---

[1]Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

claim from a plan administrator can have derivative standing to bring the action. However, we also hold that ERISA preempts a state statute purporting to assign such claims by operation of law and, instead, apply federal common law to determine the validity of the assignment. Because the fiduciary breach claims were not expressly and knowingly assigned, the assignment is invalid under federal common law and the guaranty association does not have derivative standing. Accordingly, the judgment of the district court is affirmed.

## I. BACKGROUND

The defendants are the current and former trustees and sponsors (the "Plan Administrators") of various pension plans ("Plans"). In the 1980s, the Plans invested in guaranteed investment contracts ("GICs") issued by the Executive Life Insurance Company ("ELIC"), a California insurance company. In 1991, ELIC became insolvent and was placed into receivership; as a consequence the GICs lost their value, resulting in heavy losses to the Plans' assets. In 1993, the California Insurance Commissioner proposed a rehabilitation plan that allowed holders of GICs from ELIC to obtain new contracts issued by Aurora National Life Assurance Company ("Aurora"), another insurer. Some of the Plans participated and received Aurora GICs, resulting in a waiver of any claims against the relevant state guaranty association; other Plans did not participate, allowing them to receive the liquidated cash

2

value of the ELIC GICs as well as the opportunity to challenge the guaranty association's coverage determination.

The funds for this bailout were provided in part by the Texas Life, Accident, Health & Hospital Service Insurance Guaranty Association (the "Guaranty Association"). The Guaranty Association is a statutory, nonprofit organization created by the Texas Legislature in the Texas Life, Accident, Health & Hospital Service Insurance Guaranty Act (the "Guaranty Act" or the "Act"), TEX. INS. CODE ANN. Art. 21.28-D § 8, and is supervised by the Texas Commissioner of Insurance. Its members are insurance companies doing business in Texas, which are required by law to join the Guaranty Association as a condition of doing business in the state. Like similar programs in all other states,[2] this system protects those who buy insurance policies from insurance companies that become insolvent. The protection can come in cash payments or substitute policies or contracts. Pursuant to its statutory mandate, the Guaranty Association in effect bailed out those Plans under its jurisdiction (*i.e.,* those having the requisite connection to Texas) by supplementing the diminished assets of ELIC to the point where Aurora would issue the substitute GICs.[3]

---

[2]The National Association of Insurance Commissioners ("NAIC") has promulgated the Life and Health Insurance Guaranty Association Model Act. All 50 states, the District of Columbia, Guam, Puerto Rico and the Virgin Islands have adopted the NAIC model act or similar laws. The NAIC model act may be found on Westlaw under NAIC 520-1; the corresponding law in each state or territory may be found on Westlaw under NAIC 520-27.

[3]The Guaranty Association will pay $232 million to cover the ELIC GICs. Of that $232 million, $11 million is attributable to the GICS in this case.

3

The Guaranty Association sued in federal court, claiming that the Plan Administrators breached their fiduciary duties under ERISA when they invested in the ELIC GICs. The Guaranty Association asserts that there was a host of warning signs that ELIC was on the brink of insolvency due to its heavy investing in high-risk junk bonds. The Guaranty Association further contends that it has the right to pursue these claims on behalf of the beneficiaries of the Plans due to the Guaranty Act's assignment of the beneficiaries' rights to sue the Plan Administrators for this breach. Through this assignment, the Guaranty Association claims that it has derivative standing to sue under ERISA. 29 U.S.C. § 1132(a)(2). The ultimate claim of the Guaranty Association is violation of 29 U.S.C. § 1109(a), which establishes fiduciary duties under ERISA.

The parties consented to the jurisdiction of a magistrate judge for the case. The magistrate judge granted the defendants' pretrial motions for summary judgment, finding that the Guaranty Association did not have standing to bring an ERISA breach of fiduciary duty action. In support of his conclusion, the magistrate judge first found that the Guaranty Association did not fall into the enumerated list of potential plaintiffs under 29 U.S.C. § 1132(a)(2). He next found that because of ERISA preemption, no valid assignment of rights had occurred and, therefore, the Guaranty Association could not have derivative standing. The Guaranty Association appeals.

4

## II. STANDING

### A. Derivative Standing

ERISA allows suits against plan administrators for breaches of fiduciary duty. 29 U.S.C. § 1109. The list of parties allowed to bring these actions is limited, however. Only the Secretary of Labor, participants, beneficiaries or fiduciaries of plans may bring suit under § 1109.[4]

The Guaranty Association contends that even though it is not an enumerated party, it has derivative standing to sue. The Guaranty Association maintains that, because it was assigned the plans' fiduciary duty breach causes of action, it steps into the shoes of an enumerated party and thus has standing. In *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988), we recognized derivative standing in the context of employee welfare benefit plans ("welfare plans").[5] The plans in this case are not welfare plans, but rather are employee pension benefit plans ("pension plans").[6] We have never decided whether derivative standing is allowed for breach of fiduciary duty claims arising from pension plans.

---

[4] 29 U.S.C. § 1132(a)(2) ("A civil action may be brought . . . by the Secretary [of Labor], or by a participant or fiduciary for appropriate relief under section 1109 of this title."); *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988) ("*Hermann*").

[5] A welfare plan is a plan established to provide medical or similar benefits. 29 U.S.C. § 1002(1).

[6] A pension plan is a plan established to provide retirement income or to enable savings for retirement. 29 U.S.C. § 1002(2). Welfare plans and pension plans are collectively referred to as "employee benefit plans." 29 U.S.C. § 1002(3).

The Plan Administrators argue that while derivative standing is appropriate for welfare plans, ERISA's anti-assignment provision for pension plans makes derivative standing improper for pension plans.[7] In deciding that derivative standing was allowed for welfare plans, the **Hermann** Court noted that "the existence of an elaborate and complex statutory anti-assignment clause for ERISA pension benefits makes significant the complete absence of an anti-assignment clause applicable to ERISA health benefits, especially in light of the Supreme Court's recognition of ERISA as 'comprehensive and reticulated.'" **Hermann**, 845 F.2d at 1289 (internal citation omitted), quoting **Nachman Corp. v. Pension Benefits Guaranty Corp**., 446 U.S. 359, 361 (1980). The Court in **Hermann** observed that "the purpose of ERISA's proscription on assignment of pension benefits, to further insure that the employees' accrued benefits are actually available for retirement purposes, would not be served by applying it to health care benefits." **Id.** (internal quotation and bracket omitted).

The Guaranty Association agrees that, because of the anti-assignment provision, derivative standing is not possible in the typical pension plan case. The Guaranty Association argues that this case is different because the thing which has been assigned (the right to sue for breach of fiduciary duty) is neither

---

[7]ERISA's anti-assignment provision states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d).

"benefits" nor "provided under the plan." 29 U.S.C. § 1056(d). Accordingly, the assignment is outside the scope of the anti-assignment provision.

Our sister circuits have held that "benefits," as used in ERISA, "refers only to payments due to the plan participants or beneficiaries." *Mack Boring & Parts v. Meeker Sharkey Moffitt*, 930 F.2d 267, 273 (3d Cir. 1991); *see* *Acosta v. Pacific Enterprises*, 950 F.2d 611, 619 (9th Cir. 1991) ("term 'benefit' refers to a participant's or beneficiary's right to receive monies from the plan administrator or trustees"). We agree that the term "benefits" in § 1056(d)(1) refers to the right to receive payments. The right to sue a plan administrator for breach of fiduciary duty is not a right to receive payments, so it is not "benefits" under § 1056(d). Additionally, the right to sue a plan administrator for breach of fiduciary duty is not "provided under the plan." 29 U.S.C. § 1056(d). Rather, this right is provided by ERISA itself. 29 U.S.C. §§ 1109, 1132(a)(2). Accordingly, assignment of a claim for fiduciary duty breach is not prohibited by ERISA's anti-assignment provision.

Allowing derivative standing to assignees of breach of fiduciary duty claims does not frustrate ERISA's purpose. As discussed above, the goal of ERISA's prohibition of assignment of pension benefits is to "insure that the employees' accrued benefits are actually available for retirement purposes." *Hermann*, 845 F.2d at 1289; *see also* *Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995). The *Hermann* Court noted that:

7

> To deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees' health and welfare benefit coverage. [To not allow derivative standing] would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front."

***Hermann***, 845 F.2d at 1289 n.13.

The policy considerations regarding assignment of breach of fiduciary duty claims are similar. Allowing assignees derivative standing will help insure that pension funds are available for retirement. Without derivative standing, plan administrators could never be held accountable for breaches of fiduciary duty. If a guaranty association pays a claim that resulted from the plan administrator's breach of fiduciary duty, no one would be able to sue the plan administrator. The plan participants would have no cause of action because after the claim was paid they would have suffered no damages.

As discussed above, absent derivative standing, the guaranty association would have no standing. This would allow plan administrators to gamble with pension funds covered by guaranty associations, safe in the knowledge they will never be held accountable for their actions. Encouraging such reckless behavior, even with insured pension benefits, does not promote ERISA's goal of safeguarding pension benefits for employees' retirements. The knowledge that they will be ultimately liable for any breaches of fiduciary duty, regardless of whether a guaranty association pays, will make plan administrators more mindful of their important responsibilities as fiduciaries, thus helping to "insure that the

8

employees' accrued benefits are actually available for retirement purposes." **Hermann**, 845 F.2d at 1289.

We hold that assignees of breach of fiduciary duty claims under pension plans can have derivative standing under ERISA. Assignment of those claims are not prohibited by ERISA's pension benefits anti-assignment provision, and allowing derivative standing advances ERISA's goal of safeguarding pension funds.

## B. Validity of Assignment

### 1. Assignment Under the Guaranty Act

The fact that an assignee can have derivative standing does not end our inquiry. We must determine whether the Guaranty Association has a valid assignment of the claims. The Guaranty Act provides that any person receiving benefits from the Guaranty Association under the act "is considered to have assigned the rights under, and any causes of action relating to, the covered policy or contract to the [Guaranty A]ssociation to the extent of the benefits received under this Act." TEX. INS. CODE Art. 21.28-D § 8(t).[8] The Guaranty Act further provides that "[t]he [Guaranty

_____

[8]Tex. Ins. Code Art. 21.28-D § 8(t) provides that:

A person receiving benefits under this Act is considered to have assigned the rights under, and any causes of action relating to, the covered policy or contract to the association to the extent of the benefits received under this Act, whether the benefits are payments of or on account of contractual obligations, continuation of coverage, or provision of substitute or alternative coverages. The association may require an assignment to it of the rights and cause of action by any payee, policy or contract owner, beneficiary, insured, or annuitant as a condition to the receipt of a right or benefit under

A]ssociation has all common-law rights of subrogation and any other equitable or legal remedy that would have been available to the impaired or insolvent insurer or holder of a policy or contract with respect to such a policy or contract." Tᴇx. Iɴs. Cᴏᴅᴇ Art. 21.28-D § 8(u).

The Guaranty Association argues that when the Plan Administrators accepted benefits under the Guaranty Act, by operation of law they assigned to the Guaranty Association all policy rights and causes of actions related to the ELIC GICs. Tᴇx. Iɴs. Cᴏᴅᴇ Art. 21.28-D § 8(t). The Guaranty Association contends that the Plan Administrators breached their fiduciary duties to the plan beneficiaries when they imprudently purchased the GICs of a failing company. The Guaranty Association asserts that the right to bring the breach of fiduciary duty action is a cause of action related to the ELIC GICs and, therefore, was assigned to the Guaranty Association. The Plan Administrators contend that the Guaranty Act does not assign fiduciary duty breach claims. These causes of action, they contend, do not relate to the covered policies. Instead, this provision only assigns the Plans' right to sue ELIC.

Both the Guaranty Association's and the Plan Administrators' arguments have merit, and it is unclear from the text of the Guaranty Act whether fiduciary duty breach claims are assigned. We

this Act. The subrogation rights of the association under this subsection have the same priority against the assets of the impaired or insolvent insurer as that possessed by the person entitled to receive benefits under this Act.

10

have found only one Texas case that even mentions the Guaranty Act, and it does not discuss the issue of assignment. ***Unisys Corp. v. Texas Life Accident Health & Hospital Service Insurance Guaranty Association***, 1996 WL 710769 (Tex. App. -- Austin 1996). We need not decide this novel and difficult issue of Texas law, though, because the result is the same under either party's reading of the Act. If the Plan Administrators are correct that the Act does not assign the causes of action, then there is no valid assignment and, thus, no derivative standing. If the Guaranty Association is correct that the Act assigns the causes of action, there is also no valid assignment and no derivative standing, because, as we discuss below, the Act's assignment provision is preempted by ERISA and there is no valid assignment under federal law.

### a. Preemption of the Guaranty Act's Assignment Provision

Congress included a broad preemption provision in ERISA. 29 U.S.C. § 1144. Congress provided that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[9] "Courts have interpreted this preemption broadly. . . ." ***CIGNA Healthplan of***

---

[9]ERISA's preemption provision is modified by the "saving clause," which leaves in force state laws that regulate "insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A); *see* II(a)(2)(c) below. The saving clause is in turn modified by the "deemer clause," which provides that an employee benefit plan shall not "be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

*Louisiana, Inc. v. Louisiana*, 82 F.3d 642, 646-47 (5th Cir.), *cert. denied*, 117 S. Ct. 387 (1996). ERISA's pre-emption provisions are designed to protect plan participants by eliminating the threat of inconsistent state and local regulation of employee benefit plans and establishing a uniform standard to govern employee benefit plans as an exclusive federal concern. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10-11 (1987).

A law is preempted if it "relates to" an employee benefit plan. 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96-97 (1983). The relevant portion of the Guaranty Act does not refer to ERISA plans.[10] *See New York Conference of Blue Cross v. Travelers Ins*., 115 S. Ct. 1671, 1677 (1995) (noting that statute in question did not "make 'reference to' ERISA plans in any manner"); *District of Columbia v. Greater Wash. Bd. of Trade*, 113 S. Ct. 580, 583 (1992) (striking down law that "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted"). Because the Guaranty Act does not refer to ERISA, it will be preempted only if it has a connection with an ERISA plan. *Travelers*, 115 S. Ct. at 1677.

---

[10]The Guaranty Act does state that it does not provide coverage for "a multiple employer welfare arrangement as defined by the Employee Retirement Income Security Act of 1974 (29 U.S.C. Section 1002)." TEX. INS. CODE Art. 21.28-D §3(4)(A). That provision has no connection whatsoever to this case or the Guaranty Act's assignment provisions, so we do not consider it to be a sufficient reference to ERISA for preemption purposes.

12

The Supreme Court has cautioned that "[p]reemption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Greater Wash*., 113 S. Ct. at 583 n.1 (internal quotation and citations omitted). The Supreme Court recently held that ERISA did not preempt a state law that had "only an indirect economic effect on the relative costs of various health insurance packages" available to ERISA qualified plans. *Travelers*, 115 S. Ct. at 1680. Therefore, the Guaranty Act is connected with, and thereby related to, an ERISA plan only if its association is more than tenuous, remote or peripheral. If the Guaranty Act is related to an ERISA plan, it is preempted.

The Guaranty Act's assignment provision is connected with an ERISA plan. Upon the receipt of benefits, the Guaranty Act assigns by operation of law all causes of action related to the insurance policy. This includes assignment of causes of action for breaches of fiduciary duty under ERISA. 29 U.S.C. § 1109. A state law which has the effect of assigning an ERISA cause of action clearly is connected with and relates to an ERISA plan. The connection is direct and substantial, not indirect, tenuous, remote or peripheral. *See Travelers*, 115 S. Ct. at 1680; *Greater Wash*., 113 S. Ct. at 583 n.1.

### b. Insurance Saving Clause

Because the Guaranty Act's assignment provision relates to an ERISA plan, it is preempted unless it falls under an exception in

13

the saving clause.[11]  The Guaranty Association contends that the Guaranty Act regulates insurance and thus is rescued by the saving clause.  In deciding whether a law regulates insurance for saving clause purposes, we apply a conjunctive two-step analysis.  First, we determine whether the law in question fits the common sense definition of insurance regulation.  Second, we consider three factors drawn from the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*: (1) Whether the statute has the effect of spreading policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.  ***Metropolitan Life Ins. Co. v. Massachusetts***, 471 U.S. 724, 742-43 (1985); ***CIGNA***, 82 F.3d at 650.  If the statute fits the common sense definition of insurance regulation and we answer yes to each of the questions in the three part test, then the statute falls within the savings clause, and is not preempted.  ***CIGNA***, 82 F.3d at 650.

The relevant statute in the case at bar is the Guaranty Act and, more specifically, its provision that a policyholder assigns by operation of law all claims related to the policy when the Guaranty Association provides benefits.  The Guaranty Act's assignment provision applies to policyholders; it is, therefore, not limited to "entities within the insurance industry."  ***Metropolitan***

---

[11]The saving clause provides, in relevant part, that "[e]xcept as provided in subparagraph (b) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."  29 U.S.C. § 1144(a)(2)(A).

14

*Life*, 471 U.S. at 743.  Because the Guaranty Act fails the third-prong of the McCarran-Ferguson factors, we need go no further.  Accordingly, the Guaranty Act's assignment provision does not fall within the saving clause and is, thus, preempted by ERISA.

### 2. Assignment Under Federal Common Law

We have determined that the Guaranty Act's assignment provision is preempted.  We must therefore look to federal law for guidance in determining the validity of the Plan Administrators' assignment of the breach of fiduciary duty claims.

The text of ERISA gives us no guidance in determining the proper method for assigning ERISA breach of fiduciary duty claims against pension plan administrators.  The Supreme Court has instructed that in the absence of statutory guidance, courts should develop federal common law regarding ERISA rights.  *Pilot Life Ins. Co. v. DeDeaux*, 481 U.S. 41, 56 (1987) (Congress "expect[ed] that a federal common law of rights and obligations under ERISA-regulated plans would develop.").

Because an assignment of a fiduciary duty breach claim affects all plan participants, and unsuccessful claims can waste plan resources that are meant to be available for employees' retirements, these claims are not assigned by implication or by operation of law.  Instead, only an express and knowing assignment of an ERISA fiduciary breach claim is valid.  *Cf*. *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp*., 995 F.2d 425, 439 (3d Cir. 1993) (Greenberg, J., concurring) ("only an express assignment

15

of an antitrust claim can be valid"); RESTATEMENT (SECOND) OF CONTRACTS § 324 (1981) ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee.").[12]

There is no evidence in the record that the Plan Administrators expressly and knowingly assigned the fiduciary duty breach claims. Instead, the only putative assignment is the Guaranty Act's broad provision that anyone accepting benefits under the Act "is considered to have assigned the rights under, and any causes of action relating to, the covered policy or contract to the [Guaranty A]ssociation to the extent of the benefits received under this Act." TEX. INS. CODE Art. 21.28-D § 8(t). This assignment by operation of law is not an express and knowing assignment and, thus, is insufficient to assign the fiduciary breach claims.

Because the fiduciary breach claims were not validly assigned, the Guaranty Association does not have derivative standing to bring suit against the Plan Administrators.

---

[12]While an express assignment by a plan administrator is sufficient to transfer the cause of action, it may not be sufficient to comply with all of ERISA's fiduciary requirements. Because the decision to assign a fiduciary breach claim is itself a fiduciary act, ERISA plan fiduciaries must comply with all fiduciary duties when assigning an ERISA claim, including the duties of loyalty and prudence. As the Secretary of Labor notes in his *amicus curiae* brief, where a plan administrator is asked to assign a claim against himself or his co-fiduciaries arising from imprudent investments, he faces a conflict of interest which may require him to appoint an independent fiduciary to decide whether to assign the claim. *See, e.g., **Leigh v. Engle***, 727 F.2d 113, 135026 (7th Cir. 1984); ***Schwartz v. Interfaith Medical Ctr***., 715 F. Supp. 1190, 1196 (E.D.N.Y. 1989).

16

### III. Conclusion

An assignee of an ERISA fiduciary breach claim can have derivative standing to bring suit. Because the Guaranty Act's assignment provision has the effect of assigning ERISA claims, it is preempted. As the state assignment provision is preempted, we look to federal common law, which requires an express assignment. The Plan Administrators did not expressly and knowingly assign the fiduciary breach claims, so the Guaranty Association is not an assignee and, thus, does not have derivative standing to bring this action. The judgment of the district court is **AFFIRMED**.[13]

---

[13]The Guaranty Association complains that the magistrate judge erred in dismissing as moot its motion for leave to amend its complaint. As the Plan Administrators point out, the Guaranty Association agreed to the dismissal as moot, thereby waiving any error.