**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3395 and 14-3396
_____

DARLERY FRANCO, individually and on behalf of all others similarly situated;
AMERICAN MEDICAL ASSOCIATION; MEDICAL SOCIETY OF NEW JERSEY;
MEDICAL SOCIETY OF THE STATE OF NEW YORK;
CONNECTICUT STATE MEDICAL SOCIETY; TEXAS MEDICAL ASSOCIATION;
NORTH CAROLINA MEDICAL SOCIETY; DARRICK E. ANTELL, M.D.;
FREDERICK A. VALAURI, M.D.; JAMES N. GARDNER; JOHN SENEY;
SUSAN J. SHIRING, LCSW; BRIAN MULLINS, M.S., P.T.; MALDONADO
MEDICAL LLC; PAIN MANAGEMENT CENTER OF SOUTHERN INDIANA;
CARMEN KAVALI, M.D.; TENNESSEE MEDICAL ASSOCIATION; MEDICAL
ASSOCIATION OF GEORGIA; CALIFORNIA MEDIAL ASSOCIATION; FLORIDA
MEDICAL ASSOCIATION; EL PASO COUNTY MEDICAL SOCIETY; AMERICAN
PODIATRIC MEDICAL ASSOCIATION; NEW JERSEY PSYCHOLOGICAL
ASSOCIATION; WASHINGTON STATE MEDICAL SOCIETY;
DAVID CHAZEN; NORTH PENINSULA SURGICAL CENTER, L.P.; CAMILO
NELSON, SR.; SHAHIDAH NELSON; CAMILO NELSON, JR.

v.

CONNECTICUT GENERAL LIFE INSURANCE CO.; CIGNA CORPORATION;
CIGNA HEALTH CORPORATION; CONNECTICUT GENERAL CORPORATION;
CIGNA BEHAVIORAL HEALTH INC.; CIGNA DENTAL HEALTH INC.;
S. HIGASHI, D.G., individually and on behalf of all other similarly situated agent of Mar
Vista Institute of Health;
UNITED HEALTH GROUP, INC.; INGENIX, INC.

AMERICAN MEDICAL ASSOCIATION; MEDICAL SOCIETY OF NEW JERSEY;
MEDICAL SOCIETY OF THE STATE OF NEW YORK; CONNECTICUT STATE
MEDICAL SOCIETY; TEXAS MEDICAL ASSOCIATION; NORTH CAROLINA
MEDICAL SOCIETY; TENNESSEE MEDICAL ASSOCIATION; MEDICAL
ASSOCIATION OF GEORGIA;  CALIFORNIA MEDICAL ASSOCIATION;
FLORIDA MEDICAL ASSOCIATION; WASHINGTON STATE MEDICAL
ASSOCIATION; EL PASO COUNTY MEDICAL SOCIETY;
AMERICAN PODIATRIC MEDICAL ASSOCIATION; NEW JERSEY

PSYCHOLOGICAL ASSOCIATION; JAMES N. GARDNER, M.D.; CARMEN M. KAVALI, M.D.; BRIAN MULLINS, M.S., P.T.,

                                        Appellants in 14-3395

DARLERY FRANCO; DAVID CHAZEN;
CAMILO NELSON, SR.; SHAHIDAH NELSON;
CAMILO NELSON, JR.,

                                        Appellants in 14-3396

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-07-cv-06039)
District Judge: Honorable Stanley R. Chesler

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 4, 2015

Before: RENDELL, HARDIMAN, and VANASKIE, *Circuit Judges*

(Opinion Filed:  May 2, 2016)

_____

OPINION[*]

_____

VANASKIE, *Circuit Judge*.

I.

These consolidated appeals have three sets of Appellants.  First, there are those

Appellants who are participants in employer-sponsored health care plans administered by

the Connecticut General Life Insurance Company and affiliated entities (collectively

referred to as CIGNA).  This first set of Appellants has been referred to during the course

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

of this protracted litigation as "the Subscriber Plaintiffs," a term we will likewise adopt for this opinion.

The second set of Appellants consists of healthcare providers who had not agreed to be members of CIGNA's network of healthcare providers. Healthcare providers who are members of CIGNA's network of providers agree to accept as full payment for their services the amount CIGNA promises to pay them. Non-network, or more commonly referred to as "out-of-network" ("ONET") providers, generally are entitled to receive from CIGNA no more than the "usual, customary and reasonable" ("UCR") charge for the services they render to participants in CIGNA-administered healthcare plans. Unlike in-network providers, however, the ONET providers may seek to recover from the plan participants the difference between the amount they charge and the amount they receive from CIGNA. This second set of Appellants has been referred to during the course of this litigation as "the Provider Plaintiffs," a term we also use in this opinion.

The third set of Appellants is composed of fourteen medical associations, many of whose members are not part of CIGNA's network of providers. This last set of Appellants will be referred to in this opinion as "the Association Plaintiffs."

The claims of each set of Appellants concern the adequacy of the amounts paid by CIGNA to ONET providers.[1] In particular, each set of Appellants asserts that CIGNA made improper use of a flawed database of healthcare charges compiled by Ingenix, Inc., to determine the UCR for services rendered by ONET providers. Each group of

---

[1] The facts of this protracted litigation have been recounted at great length by the District Court in its several opinions, and we will set forth only those facts essential to our resolution of the Appellants' claims.

3

Appellants claims that use of the Ingenix database resulted in payments substantially below the UCR that CIGNA was obligated to pay under the employer-sponsored healthcare plans. As a consequence of the allegedly inadequate payments, Subscriber Plaintiffs were subject to being billed for the difference between the provider's charges and the amount paid by CIGNA, a practice known as balance billing.

Each set of Appellants asserted claims against CIGNA under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, for unpaid benefits, and under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, based upon assertions of a conspiracy between CIGNA and Ingenix to underpay claims. In addition, the Provider Plaintiffs and the Association Plaintiffs asserted claims under the Sherman Antitrust Act, 15 U.S.C. § 1, and California law based upon price fixing allegations. One group of Subscriber Plaintiffs, the Nelsons (Camilo, Shahidah, and Camilo, Jr.), also brought RICO as well as federal and state antitrust claims against CIGNA, Ingenix, and Ingenix's parent company, United Health Group, Inc. The Nelsons also sued CIGNA, Ingenix, and United Health Group under California common law. Another Subscriber Plaintiff, David Chazen, presented a claim against CIGNA under New Jersey law.

The District Court issued a series of opinions in this matter. Relevant to these consolidated appeals, the District Court first held that the Provider Plaintiffs and Association Plaintiffs lacked standing to sue CIGNA, resulting in the dismissal of all their claims. (J.A. 150-56.) The District Court also ruled that the Nelsons lacked standing to pursue their RICO and antitrust claims, (J.A. 175, 184-204), and later

4

dismissed their common law civil conspiracy claim. (J.A. 217-25.) The District Court next denied the Subscriber Plaintiffs' initial class certification motion (J.A. 87), and their renewed class certification motion.[2] (J.A. 53-85.) Finally, on June 24, 2014, the District Court granted CIGNA's motion for summary judgment on the Subscriber Plaintiffs' remaining claims, and denied their motion for partial summary judgment.

The June 24th ruling brought to conclusion the District Court proceedings that had begun in 2004. These consolidated appeals followed.[3] For the reasons that follow, we will affirm the District Court's rulings as to the Subscriber Plaintiffs and the Association Plaintiffs, but vacate and remand as to the Provider Plaintiffs.

II.

Each set of Appellants has presented discrete claims. We will address first the claims of the Subscriber Plaintiffs.

A.

The Subscriber Plaintiffs present the following issues for our consideration:

> 1. Did the District Court abuse its discretion in denying class certification under Fed. R. Civ. P. 23 on Plaintiffs' claims under ERISA, 29 U.S.C. § 1132(a)(l)(B) and under RICO, 18 U.S.C. § 1962(a) and (d)?

---

[2] Before deciding the Subscriber Plaintiffs' renewed class certification motion, the District Court granted CIGNA's motion to strike expert witness reports submitted by the Subscriber Plaintiffs years after the deadline for expert witness disclosures. (J.A. 228-34.)

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

2. Did the District Court err on the dispositive issue, namely, whether CIGNA's use of Ingenix data to determine UCR violated CIGNA's unambiguous plan terms, resulting in improperly reduced benefits under ERISA?

3. Did the District Court erroneously grant CIGNA summary judgment on the issue of whether CIGNA's UCR determinations denied Plaintiffs benefits under ERISA?

4. Did the District Court err in denying Plaintiffs partial summary judgment that the Ingenix database did not and could not comply with CIGNA's unambiguous plan terms?

5. Did the District Court err in granting CIGNA summary judgment on Plaintiffs' RICO claims on the basis that Plaintiffs had to show they suffered a RICO injury demonstrated by out-of-pocket loss such as a payment of a balance bill from their medical provider?

6. Did the District Court err in granting CIGNA's motion for summary judgment on the RICO issue of whether the alleged scheme involved any fraud and fraudulent intent by CIGNA?

7. Did the District Court err in granting CIGNA's motion to dismiss on the ground that the Nelson Plaintiffs failed to plead RICO standing because they did not allege an out-of-pocket loss in the form of a payment of a balance bill to a provider for ONET service or receipt of such a balance bill from a provider?

8. Did the District Court abuse its discretion in granting CIGNA's motion to strike Plaintiffs' supplemental expert reports?

(Subscriber Plaintiffs' Br. at 2-3.)

We have carefully considered each of these issues. First, we find no abuse of

discretion in either the District Court's decision to strike the untimely expert reports or

6

the denial of class certification.[4]  Nor does our plenary review of the District Court's summary judgment ruling reveal any error.  Finally, we agree that the Nelsons, who were not balance-billed for services rendered by their ONET provider, failed to allege an injury sufficient to permit them to maintain a RICO claim.  We therefore affirm each of the rulings challenged on appeal by the Subscriber Plaintiffs on the basis of the District Court's thorough and well-reasoned opinions.

B.

The Provider Plaintiffs assail the District Court's decision that they lack standing to sue under ERISA.[5]  They assert that assignments of benefits from participants in the CIGNA-administered healthcare plans include the right to sue under ERISA to recover those benefits.[6]

In *North Jersey Brain & Spine Center v. Aetna, Inc.*, we addressed "the question of what type of assignment is necessary to confer derivative standing" to sue under ERISA for benefits provided by an employer-sponsored healthcare plan.  801 F.3d 369, 372 (3d Cir. 2015) [hereinafter *NJBSC*].  In *NJBSC*, the plan participants had assigned to their healthcare provider "'all payments for medical services rendered to myself or my

---

[4]  We previously denied the Subscriber Plaintiffs' requests to accept interlocutory appeals from the denial of class certification.  *Franco v. Conn. Gen. Life Ins. Co.*, No. 13-8010 (3d Cir. Mar. 14, 2013) (denying petition for leave to appeal under Fed. R. Civ. P. 23(f)); *Franco v. Conn. Gen. Life Ins. Co.*, No. 14-8053 (3d Cir. June 12, 2014) (same).

[5] The Provider Plaintiffs did not appeal the dismissal of their RICO and Sherman Act Claims.

[6] Our review of a District Court order dismissing a complaint for lack of standing is plenary.  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 74 (3d Cir. 2011).

dependents.'" *Id.* at 370-71. Although receiving this assignment of all payments owed by the insurance company, the healthcare provider in *NJBSC* "reserved the right to bill the patients for any amount not covered by their insurance." *Id.* at 371. Aetna argued that the assignment was insufficient to confer derivative standing to the healthcare provider, asserting that "an assignment must explicitly include not just the right to payment but also the patient's legal claim to that payment." *Id.* at 372. In rejecting Aetna's argument, we explained:

> [W]e are guided by Congress's intent that ERISA "protect . . . the interests of participants in employee benefit plans," 29 U.S.C. § 1001(b), and our conviction that the assignment of ERISA claims to providers "serves the interests of patients by increasing their access to care." *CardioNet*, 751 F.3d at 179. It does not seem that the interests of patients or the intentions of Congress would be furthered by drawing a distinction between a patient's assignment of her right to receive payment and the medical provider's ability to sue to enforce that right. The value of such assignments lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front. Patients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider, which will ordinarily be better positioned to pursue those claims. *See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 n.13 (5th Cir. 1988) ("[P]roviders are better situated and financed to pursue an action for benefits owed for their services."). These advantages would be lost if an assignment of payment of benefits did not implicitly confer standing to sue. *See Conn. State Dental*, 591 F.3d at 1352. As the United States Court of Appeals for the Fifth Circuit observed, if providers' "status as assignees does not entitle them to federal standing against [insurers], providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative . . . would discourage providers from becoming assignees and possibly from helping beneficiaries who were

8

> unable to pay them 'up-front.'" *Hermann Hosp.*, 845 F.2d at 1289 n.13.

*Id.* at 373-74.

*NJBSC* compels reversal of the District Court's ruling that the Provider Plaintiffs lack standing to sue under ERISA for benefits allegedly owed to their assignors. CIGNA argues that reversal is not warranted because the Provider Plaintiffs failed to allege with adequate specificity the existence of valid assignments of benefits from their patients, contending that there must be "a complete and unequivocal transfer of the patient's right to benefits" in order to confer standing. (CIGNA Br. at 75.) *NJBSC*, however, rejected this contention, observing that "[a]n assignment of the right to payment logically entails the right to sue for non-payment." 801 F.3d at 372. The Provider Plaintiffs have pled that they have received from CIGNA insureds "an assignment of benefits," (J.A. 395), or "a claim assignment . . . through which [the Provider Plaintiff] is paid directly by CIGNA." (J.A. 398.) These averments are sufficient to plead the existence of a valid assignment to support derivative standing. Accordingly, the dismissal of the Provider Plaintiffs' ERISA claim must be reversed.

## C.

That the Provider Plaintiffs have standing to sue under ERISA does not mean that the Association Plaintiffs, *i.e.*, the medical societies and associations whose members provide ONET services to CIGNA insureds, necessarily have standing to bring ERISA claims as well. An association may bring suit on its members' behalf "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it

9

seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The District Court found that the Association Plaintiffs could not satisfy either the first or third prong of the three-part test of representative standing. In light of our holding that the Provider Plaintiffs do indeed have standing to sue under ERISA, the District Court's conclusion with respect to the first prong of the test must be rejected. The Provider Plaintiffs do have standing to sue under ERISA in their own right.

The District Court's conclusion on the third prong of the test for association standing (that the participation of individual members of the Association Plaintiffs would be required in order for the Association Plaintiffs to seek relief), however, remains sound. In order to show that ERISA-governed benefits were not paid by CIGNA, a court would have to undertake a close examination of the terms of each of the many employer-sponsored healthcare plans administered by CIGNA in the context of the specific healthcare services rendered by each member of the Association Plaintiffs. Issues such as the existence of assignments to Association Plaintiffs' members, exhaustion of plan remedies, and the amounts billed and actually paid would have to be addressed. Participation of members of the Association Plaintiffs would be essential to resolve these issues. Thus, the District Court was correct to find that the Association Plaintiffs lack standing to bring claims for ERISA benefits.

The District Court was also correct in finding that the Association Plaintiffs lack standing to pursue RICO and Sherman Act antitrust claims in a representative capacity.[7] As with the ERISA claim, the participation of individual members of the Association Plaintiffs would be essential for the Association Plaintiffs to show an entitlement to relief. In this regard, it does not matter that the Association Plaintiffs purport to seek only injunctive and declaratory relief. In order to show a violation of the racketeering act or the antitrust law, detailed inquiries concerning healthcare providers' billing practices and claims processing experience with CIGNA would be necessary. Thus, the third prong of the test for association standing for the RICO and antitrust claims cannot be satisfied. Accordingly, the dismissal of the Association Plaintiffs' claims will be affirmed.

V.

For the foregoing reasons, we will affirm the District Court's various rulings with respect to the Subscriber Plaintiffs and its dismissal of the claims of the Association Plaintiffs. As to the Provider Plaintiffs, however, we will vacate the dismissal of their ERISA claims and remand for further proceedings.

---

[7] The Association Plaintiffs have abandoned their challenge to the District Court's dismissal of the RICO and Sherman Act claims brought on their own behalf.